364 So.2d 47 (1978)
Louis K. STEINER, Appellant,
v.
CIBA-GEIGY CORPORATION, Appellee.
No. 77-2691.
District Court of Appeal of Florida, Third District.
October 31, 1978.
Rehearing Denied December 6, 1978.
*48 Podhurst, Orseck & Parks and Michael Olin, Miami, for appellant.
Walton, Lantaff, Schroeder & Carson and Laurence A. Schroeder, Miami, for appellee.
Before PEARSON, BARKDULL and KEHOE, JJ.
PEARSON, Judge.
The plaintiff, Louis K. Steiner, appeals a summary final judgment for the defendant Ciba-Geigy Corporation. The controlling question presented is whether the trial court correctly determined that it appeared without genuine issue of material fact that the cause of action arose more than four years prior to the filing of the complaint. We hold that it conclusively appears from the evidentiary matters before the trial court on the motion for summary judgment that the "... facts giving rise to the cause of action were discovered or should have been discovered *49 with the exercise of due diligence ...[[1]]" more than four years prior to the filing of this cause, and the action was, therefore, barred by the Statute of Limitations, Section 95.11(3)(a) & (e), Florida Statutes (1977).[2]
The complaint charged the defendant with negligence, breach of express warranty, breach of implied warranty and strict liability on the ground that the plaintiff, at various times and pursuant to a physician's prescription, ingested a drug known as Tegretol manufactured by the defendant. It further alleged that as a proximate result of the ingestion of the drug, the plaintiff was substantially, if not totally, blinded. The defendant answered, pleading affirmative defenses, including the statute of limitations. Discovery proceeded and the defendant moved for a summary judgment on the basis of plaintiff's answers to interrogatories and the deposition of plaintiff. The trial court entered summary judgment and no other basis for the judgment is urged by the appellee other than that it appears without genuine issue of material fact that the defendant was entitled to a judgment as a matter of law because of plaintiff's failure to file the action within the four year period prescribed by Section 95.11(3)(a) & (e), Florida Statutes (1977).
The facts revealed upon discovery, viewed in the light most favorable to the plaintiff, are as follows:
Prior to March, 1971, Louis Steiner was in good health. On or about March 17, 1971, Mr. Steiner contracted herpes zoster  commonly known as shingles. His symptoms began as an itch and a rash on the upper portion of his lip and progressively worsened ultimately resulting in considerable pain on the entire left side of his face. He was treated by Dr. William Abelove, who told him that shingles affects the nerves. Mr. Steiner was hospitalized at Doctors Hospital for five days. He did not recall what medications he was given, although he did not believe those medications included Tegretol. He obtained minor relief during his first hospitalization.
After his release from the hospital in April, 1971, Mr. Steiner was treated by Dr. Sherif Shafey, a neurologist who had first seen him in the hospital. His condition was ultimately diagnosed as post-herpetic neuralgia, or post-zoster syndrome.
The pain continued, and on August 31, 1971, Dr. Shafey first prescribed Tegretol. At that time, he was also taking other drugs. Mr. Steiner took Tegretol until his next admission to the hospital on September 16, 1971. He stayed for five days, but did not know which drugs he was given in the hospital.
The first change in Mr. Steiner's eyesight occurred the second week in September, 1971. Just prior to his hospitalization, Mr. Steiner's right eye experienced what he called a "rising tide effect." That is, his loss of sight would proceed upwards from the bottom of his eye. Only the vision in his right eye was affected, and the neuralgia he was experiencing occurred only on the left side of his face. Mr. Steiner told *50 Dr. Shafey of his vision problem while he was in the hospital. Shafey advised him to see an ophthalmologist upon his discharge. The condition continued after that discharge until only a glimmer of light was visible over the top of his right eye. He saw Dr. Warren Lieberman, an ophthalmologist. Dr. Lieberman did not name Mr. Steiner's ailment, but prescribed a drug called Decadron.
Dr. Lieberman told Mr. Steiner that with medication he hoped Mr. Steiner would be able to recover his sight. His sight, in fact, did improve.
Mr. Steiner next took Tegretol in April, 1972, again upon Dr. Shafey's prescription. Mr. Steiner took Tegretol for four or five days and noted a vision problem in his left eye. He described the vision problems with his left eye as being like a jigsaw puzzle with pieces missing.
Mr. Steiner returned to Dr. Lieberman in May, 1972, and was told by Dr. Lieberman that he was suffering from "optic neuritis." Dr. Lieberman decided the situation was serious and sent Mr. Steiner to the Bascom-Palmer Eye Clinic to see Dr. Joel Glaser, who confirmed the diagnosis of optic neuritis. He told Mr. Steiner that the problem was quite serious. Dr. Glaser advised Mr. Steiner that he wanted to wait a few days before beginning treatment. Before treatment began, however, both eyes worsened. Mr. Steiner's vision never improved. On August 30, 1972, Mr. Steiner expressed to Dr. Ross Davis, whom he had consulted for his neuralgia, that it appeared to him that his vision seemed to decrease at about the same times he was taking Tegretol. He recalled that he "... just got to wondering, is this coincidence or what?" He felt that "[s]omething was doing it," and stated, "... it seemed that there was a temporal relationship, I guess."
Tegretol was gain prescribed in September, 1972, by Dr. Shafey, who was still treating the plaintiff's post-herpetic neuralgia. Mr. Steiner did not complete this prescription but discontinued it after only four to five days. He took the Tegretol in very small amounts and his visual acuity decreased but then improved when he stopped taking Tegretol. He did this twice and confirmed for himself that there was a relationship between his loss of eyesight and the taking of Tegretol. This action against the manufacturer of Tegretol was filed January 12, 1977.
Appellant presents three points. The first urges that there is a genuine issue of material fact concerning the time that he knew, or should have known, of the cause of his injury and, therefore, that summary judgment is precluded. The second urges that the facts on the record were not sufficient in 1972 to show that he knew, or should have known, the cause of his injury. Third, it is urged that the summary judgment should be reversed as being premature in that further discovery should have been permitted prior to determination of the statute of limitations issue.
We will deal with the first two points together. The decision of the Supreme Court of Florida in Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), appears to us to govern in this case. In Nardone, the Supreme Court dealt with a certified question from the United States Court of Appeals, Fifth Circuit, in a medical malpractice action. The question concerned the commencement of the period of limitations, as follows:
"`I. In a medical malpractice case does the period of limitation (F.S.A. 95.11(4)) commence:
(a) As to the parents and legal guardians of the incompetent minor in their own right
(b) As to the parents and legal guardians of the incompetent minor as next friends in behalf of the minor
(c) As to the incompetent minor in his own right when the parents and legal guardians of the incompetent minor have (i) knowledge of the physical condition and the drastic change therein during the course of medical treatment, but (ii) do not then have (or are not charged with having) knowledge that such physicalmental condition was caused in whole or in part by acts or non-acts of the alleged malpractitioner?'"
*51 The evidentiary facts in the Nardone case are too long to be restated here. However, it should be stated that the plaintiffs in Nardone claimed medical negligence in the post-operative treatment of their son. The appeal was taken from a summary final judgment for the defendants entered on the basis of an affirmative defense of this same section of the statute of limitations. Although Section 95.031, Florida Statutes (1977), containing the language "... facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence . ." was not then in effect, the Florida Supreme Court reached a conclusion that such a rule applied in this state. The Supreme Court held:
"With the knowledge of the severity of their son's resultant condition, the parents through the exercise of reasonable diligence were on notice of the possible invasion of their legal rights. Notice of the consequences of the physician's acts, assuming arguendo that they were negligent, occurred in 1965." 333 So.2d at 34.
* * * * * *
The Court concluded:
"For the aforegoing reasons, the first question is answered in the affirmative. The nature of the infant's condition was patent in 1965, before his discharge from the hospital, and was reaffirmed by Dr. Vicale in October, 1965; the records at all times were readily available. Cf. City of Miami v. Brooks, supra [70 So.2d 306 (Fla. 1954)]; Cristiani v. City of Sarasota, supra [65 So.2d 878 (Fla. 1953)], and Buck v. Mouradian, supra [100 So.2d 70 (Fla. 3d DCA 1958)]." 333 So.2d at 40.
The appellant relies for reversal on the reasoning of the Fourth District Court of Appeal in Pinkerton v. West, 353 So.2d 102 (Fla.4th DCA 1977). The appeal in Pinkerton was taken from a summary final judgment rendered in favor of the defendant on a claim of legal malpractice. The basis for the summary judgment was, as here, the statute of limitations. On appeal, the plaintiff urged that under the statutory language, the statute of limitations did not begin to run until she was told by another attorney that the advice she had been given by the defendant attorney was erroneous. The defendant urged that the statute began to run when, after reading an article stating the law to be different from the advice given to her, she questioned the competence of her attorney. The court held:
* * * * * *
"It is significant however that the record is silent as to evidence conclusive, as a matter of law, that she knew or should have known her lawyer was wrong in his rendered legal opinion that bankruptcy defeated alimony arrearages. At all events, it would appear to us to be a question of fact as to whether his incompetence was so glaring and of such magnitude that his client was on notice to pay no attention to any of his legal advice.
"All this being so, we think it was error for the judge to grant a summary judgment against the appellant. As we have held before:
`the applicability of the statute of limitations to the plaintiffs' cause of action for malpractice against the attorney-defendant is dependent upon when the attorney's alleged act of negligence became known to the client which matter is a question of fact to be determined by the trier of the fact and not by the court in a summary proceedings.' Schetter v. Jordan, 294 So.2d 130, 131 (Fla. 4th DCA 1974).
"This cause is reversed and remanded for further proceedings consistent herewith."
Applying the ruling in Pinkerton to the facts as shown by the defendant on its motion for summary judgment in this case, the plaintiff urges that he could not have known in fact whether his blindness was caused by Tegretol. By way of illustration, it is suggested that had he gone to a lawyer to bring a suit against the manufacturers of Tegretol, the lawyer would have refused the case because only the temporal relationship between the dosages of Tegretol and the loss of visual acuity existed.
*52 The difficulty with the illustration and the argument that it supports is that it cannot be known as a legal fact that Tegretol caused plaintiff's blindness until such is established by legal processes. This record does not show, at this stage in the proceedings, any theory other than the temporal relationship claimed for plaintiff's present belief that his damages were caused by Tegretol.[3]
As plaintiff points out, he has no burden to prove his case on defendant's motion for summary judgment. On the other hand, when it appears without genuine issue of material fact from defendant's motion that an affirmative defense is a bar to the cause of action, then unless the plaintiff comes forward with some factual matter to create a genuine issue, the judgment for the defendant on its motion is proper. See Latour Auto Sales, Inc. v. Stromberg-Carlson Leasing Corporation, 335 So.2d 600 (Fla. 3d DCA 1976). See also Prather v. Neva Paperbacks, Inc., 446 F.2d 338, 340 (5th Cir.1971).
To follow plaintiff's suggestion that under the doctrine in Pinkerton, he must either be advised by a competent authority that he has a cause of action, or that he must "know for a fact" that he has a cause of action would be to change the wording of the statute, which requires only that facts giving rise to the cause of action, be discovered, or should be discovered, with the exercise of due diligence. In our view, the holding in Pinkerton must be that under the facts of that case, there was a genuine issue concerning the time the plaintiff knew, or should have known, created by plaintiff's expressed dissatisfaction and the later advice. In the present case, there is no genuine issue of material fact. The question is whether the facts known to the plaintiff were sufficient as a matter of law to begin the running of the statute of limitations.[4]
In this regard, the plaintiff is in much the same position as the parents in the Nardone case, who, in 1965, were not fully aware of the complete facts when their son's condition after post-surgical treatment became considerably worse than anyone could have expected. However, from 1965 to 1971, the year the parents learned of the negligent treatment, there was no tolling of the statute of limitations because the facts known by, or accessible to, the parents in 1965 were sufficiently adequate to put them on notice that there was something or someone primarily or totally responsible and probably legally liable for their son's adverse and tragic condition. Unlike the plaintiff in Pinkerton, who at most could merely suspect the incompetence of her attorney, the parents in Nardone knew, or should have known, in 1965 that a defendant or defendants to a negligence action "already" existed. The same is true in our present case where plaintiff Steiner in mid-1972 was on notice, based on the facts already discussed, that a defendant or defendants "already" existed. Finally, in Nardone and the present case, it should be noted that the potential defendants were not so numerous as to place an undue burden on the plaintiffs. In each case, adequate facts existed at an early date to point in a single, general direction in a search for the responsible party or parties. In Pinkerton, the allegedly responsible party (the attorney) was identifiable from the start; however, the facts available at the earlier date did not put the plaintiff on notice that someone, somewhere (namely the attorney) was at that time legally responsible for anything. It was only at a much later date that the *53 plaintiff was put on notice, through advice from another attorney, that her original attorney had been negligent in providing incorrect legal advice.
These and other cases on the subject lend themselves to the proposition that the statute of limitations will begin to run only when the "moment of trauma" and the "moment of realization" have both occurred. By "trauma," we simply mean the ill effect, damage or injury; and by "realization," we mean the "known or should have known" element associated with the trauma. In Nardone, as in the present case, the trauma itself, plus the surrounding circumstances, immediately gave rise to the realization. As a matter of law, the realization in Pinkerton of the conflict between the newspaper article and the prior legal advice did no more than give rise to a suspicion of the trauma (the ill effects from the incorrect legal advice). The knowledge subsequently acquired from another attorney was the realization of the trauma's actual existence and of its exact nature. The same pattern is usually true in the case of a patient with surgical equipment or implements negligently left in his or her body. See e.g., Salvaggio v. Austin, 336 So.2d 1282 (Fla. 2d DCA 1976). The post-surgical pain or discomfort and possible physical injury resulting from the negligence in such cases would produce the trauma, but ordinarily at that time inadequate facts would exist to give rise to the realization. A subsequent x-ray, for example, revealing the negligence would then signal the "moment of realization," which in turn, as in Pinkerton, would more clearly illuminate and define the already existent trauma.[5] In such instances, a question of fact concerning the running of the statute of limitations would ordinarily be presented. However, as already pointed out, our present case falls under the Nardone example and not the Pinkerton example. Therefore, Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), governs in this case.
Turning to plaintiff's last point on appeal urging that the summary final judgment was premature, we hold that the record does not support this theory. The Florida Rules of Civil Procedure[6] provide a remedy for a party opposing a motion who finds that additional affidavits or depositions are necessary. Plaintiff, having failed to follow the rule even to move for a continuance of the hearing on the motion, may not claim error in the appellate court because the trial judge proceeded as provided by the rules. Cf. Page v. Staley, 226 So.2d 129, 131 (Fla. 4th DCA 1969).
Affirmed.
NOTES
[1] "95.031 Computation of time.  Except as provided in subsection 95.051(2) and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.

"(1) * * *
"(2) Actions for products liability and fraud under subsection 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in subsection 95.11(3) but in any event within 12 years after the date of delivery of the completed product to its original purchaser or the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered."
[2] "95.11 Limitations other than for the recovery of real property.  Actions other than for recovery of real property shall be commenced as follows:

* * * * * *
"(3) WITHIN FOUR YEARS. 
"(a) An action founded on negligence."
* * * * * *
"(e) An action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property, including fixtures."
[3] * * * * *
"Once plaintiff is on inquiry that it has a potential claim, the statute can start to run. * * * This standard is in line with the modern philosophy of pleading which has reduced the requirements of the petition and left for discovery and other pretrial procedures the opportunity to flesh out claims and to define more narrowly the disputed facts and issues." Japanese War Notes Claimants Ass'n of Philippines, Inc. v. United States, 373 F.2d 356, 359, 178 Ct.Cl. 630, 634 (1967).
[4] As was stated in Nardone,

"The means of knowledge are the same as knowledge itself. Scroggin Farms Corp. v. McFadden, 165 F.2d 10, 18 (8th Cir.1948)."
[5] See also the products liability warranty case of Creviston v. General Motors Corporation, 225 So.2d 331 (Fla. 1969).
[6] See Fla.R.Civ.P. 1.510(f).