### Dana BYINGTON and Bruce Byington, Plaintiffs,

v.

### A.H. ROBINS CO., INC., et al., Defendants.

### No. 82–8027–CIV–JAG.

United States District Court, S.D. Florida, N.D.

March 2, 1984.

Theodore A. Deckert, Mathison & Deckert, West Palm Beach, Fla., for plaintiffs.

Henry Knoblock, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for defendants.

## ORDER OF DISMISSAL WITH PREJUDICE

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the Defendant, A.H. ROBINS COMPANY, INC.'s Motion for Summary Judgment. The Court has considered the motion, and being otherwise duly advised, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment be and the same is hereby GRANTED, and that this cause is hereby DISMISSED WITH PREJUDICE as to Defendant A.H. ROBINS COMPANY, INC.

### I. *Background*

 Plaintiff, Dana Byington,[1] claims that her use of A.H. Robins Company's intrauterine device (IUD) from August

1. Dana Byington's husband, Bruce Byington, also is a plaintiff in this case. Because the legal issues involve Mrs. Byington's injuries and her failure to bring suit within four years of the time her cause of action accrued, the Court will, as a matter of convenience, refer to Mrs. Byington as Plaintiff in the text.

1972 until January 1976 caused her to contract pelvic inflammatory disease. Plaintiff underwent surgery in 1978 and filed this suit in January 1982. The issue presented here is whether there exists no genuine issue of material fact that Plaintiff's cause of action accrued more than four years prior to the filing of the complaint. Defendant A.H. Robins Company has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This Court must view the inferences to be drawn from materials submitted in support of Defendant's motion, however, in a "light most favorable to the party opposing the motion." *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983).

## II. *Analysis*

■ Under Section 95.11(3)(a), (e), Fla. Stat. (1981),[2] the four-year statute of limitations for suits sounding in negligence, fraud, or products liability begins to run when the plaintiff discovers or, through the use of reasonable care, should have discovered, the injury. Florida law provides that this "discovery" occurs when the plaintiff either has notice of the negligent act giving rise to the cause of action or when the plaintiff has notice of the physical injury which is the consequence of the negligent act. *City of Miami v. Brooks*, 70 So.2d 306, 307–08 (Fla.1954). As a matter of law, the plaintiff is on notice only after she has suffered damage or injury ("trauma") *and* realizes, or should have realized, that defendant's product is in some way responsible for her trauma ("realization"). *Steiner v. Ciba-Geigy Corp.*, 364 So.2d 47, 53 (Fla. 3d DCA 1978).

■ The record here is replete with evidence of Plaintiff's injuries which, on Defendant's motion for summary judgment, are presumed to be due in some part to Defendant's IUD, commercially known as the Dalkon Shield. Far more problematic is the issue of Plaintiff's realization of the accrual of her cause of action. Defendant points out that Plaintiff's physician, after "reading about the association of IUD's with an increased incidence of pelvic inflammatory disease," informed Plaintiff that he suspected that her IUD might be causing her discomfort and recommended its removal. At this point, suggests Defendant, Plaintiff should have realized that the IUD was causing her injury. Plaintiff responds that her cause of action accrued only after she viewed a television program on the IUD and pelvic inflammatory disease in 1981.

Had Mrs. Byington's symptoms stopped following the removal of the Dalkon Shield in January 1976, this Court would likely conclude that, as a matter of law, she should have discovered the injury and the suspected causative agent at that time. *Steiner v. Ciba-Geigy Corp.*, 364 So.2d 47 (Fla. 3d DCA 1978), dictates this result. The plaintiff in *Steiner* suffered from poor eyesight that improved after he discontinued use of a specific drug. The plaintiff's realization of the correlation between his visual acuity and the drug, a discovery made without help from his physician, was sufficient to put him on notice that a cause of action had accrued.

But in this case, the record clearly indicates that Mrs. Byington suffered persistent pain for two years after her physician had removed the IUD. Based on the *Steiner* court's logic alone, it seems doubtful that Plaintiff should have realized that her continued discomfort was due to the now-removed IUD.

The question remains, however, whether Plaintiff's persistent pelvic pain, coupled with her doctor's verbalized suspicions and Defendant's public disclosure of the possi-

---

**2.** Actions other than for recovery of real property shall be commenced as follows:

 . . . . .

 (3) WITHIN FOUR YEARS.—
 (a) An action founded on negligence.

 . . . . .

 (e) An action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property, including fixtures.
Fla.Stat. § 95.11(3)(a), (e) (1981).

ble dangers of the Dalkon Shield in 1974, should have put her on notice that her cause of action had accrued. In resolving this issue, a balance must be struck between the patient's inability to appreciate the significance of the physician's comments, and the manufacturer's right not to be potentially liable in perpetuity for injuries caused by a specific act or product.

The deposition transcript of Plaintiff's physician, Dr. Cocotos, reveals that he voiced his suspicions about the link between pelvic inflammatory disease and the IUD in December 1975 and January 1976.

Q Why did you attempt to remove the IUD at that time? [Referring to Plaintiff's December 29, 1975 visit to Dr. Cocotos]

A I had been reading about the association of IUD's with an increased incidence of pelvic inflammatory disease; and I thought at the time, since she's had it in for awhile, it probably would be better to remove it and not take any chances on it really being associated, because I didn't know. There was just a lot of controversy at the time whether IUD's were related.

Q Did you tell her that you thought that her pelvic inflammatory disease might be related to her use of the IUD?

A Yes.

Q How did she respond?

A Well, she told me I could take it out, and when I attempted to remove it, she became very uncomfortable and I didn't force the issue.

What we decided to do, she was going to come back, as I remember, and see how she's doing in a few days, and see if she's more comfortable. And I told her I wanted to take it out when she came back, and she said she'd think about it.

Q Okay, and when was the next time that you saw her, Doctor?

A January 2, 1976.

Q And what was her complaint at that time?

A It was also a follow-up for the same problem. She was feeling much better, and that's—at that time I did write a note about her—talk about having the IUD removed because of the possibility of an increase in incidents of pelvic inflammatory disease.

Q And you informed her of that?

A Yes.

Defendant's Motion for Summary Judgment and Supporting Memorandum, at 3–4 (filed Jan. 11, 1984) (quoting deposition transcript of Dr. Cocotos, pages 12, 13, 15, 16).

Plaintiff's knowledge of her physician's suspicions, the fact that in 1974 A.H. Robins Company publicly declared that pelvic inflammatory disease might be caused by the Dalkon Shield, and the Plaintiff's persistent symptomology, lead this Court to find that there exists no genuine issue of material fact that Plaintiff's cause of action accrued more than four years prior to the filing of the complaint.

After the IUD was inserted, and before Plaintiff visited Dr. Cocotos in December 1975, she experienced the symptoms of pelvic inflammatory disease. At this time, without any independent means of ascertaining whether her pelvic pain was due to the IUD, and without possessing any medical knowledge that would independently lead her to suspect the IUD, Plaintiff probably should not be expected to realize the association between the Dalkon Shield and her discomfort.

But once Dr. Cocotos notified her of his suspicions regarding the relationship between the IUD and pelvic inflammatory disease, Plaintiff should have realized that her cause of action had accrued.[3] *See City*

---

**3.** A claimant also is expected to realize that a cause of action has accrued when the general cause of her condition is patently and obviously identifiable, *Nardone v. Reynolds,* 333 So.2d 25, 33 (Fla.1976) (upon entering hospital, child experienced difficulty with coordination, blurred vision, dyplopia, and headaches; upon discharge, he was comatose, totally blind); or easily deduced from certain identifiable conditions, *e.g., Steiner.*

*of Miami v. Brooks*, 70 So.2d 306 (Fla.1954) (plaintiff discovered that x-ray treatment had caused her injury when, five years after the regimen, she was so "advised" and also noticed that a recently-developed sore had turned into an ulcer); *Salvaggio v. Austin*, 336 So.2d 1282 (Fla. 4th DCA 1976) (patient's cause of action accrued when her physician, after examining recently-taken x-rays, informed her that post-surgical pain was due to presence of drainage tube left behind after surgery); *cf. Pinkerton v. West*, 353 So.2d 102 (Fla. 4th DCA 1977) (client not expected to discover that she had received mis-advice from her attorney unless so informed by another attorney and possibly put on notice by newspaper article). It matters not that Mrs. Byington continued to experience pain after the removal of her IUD, for once there is notice of the negligent act, the statute of limitations begins to run even if the full consequences are not known. *City of Miami*, 70 So.2d at 308 (citing 34 Am. Jur. Limitation of Action § 160, at 126). Although she did not "know for a fact" that the IUD was the cause of her discomfort, Mrs. Byington certainly had available to her "adequate facts ... to point in a single direction in search for the responsible party of parties." *Steiner*, 364 So.2d at 52.

That Plaintiff is neither a physician nor a lawyer, capable of understanding the medical or legal significance of her physician's comments, is not decisive in this case. All that is necessary is that information be made available to Plaintiff so that *she* suspects, or after a reasonably diligent investigation should suspect, that the IUD contributed to her pain.[4] If potential lay claimants were required to possess a professional level of knowledge before a cause of action was discoverable, then theoretically the claimant's action would almost never accrue. Such a result not only is contrary to the conclusion reached by Florida courts which have interpreted Section 95.11(3)(a), (e),[5] but it also contravenes the underlying purpose of statutes of limitation, which is "to protect defendants against unusually long delays in filing of lawsuits and to prevent unexpected enforcement of stale claims concerning which interested persons have been thrown off guard for want of reasonable prosecution." *Nardone v. Reynolds*, 333 So.2d 25, 36 (Fla.1976).

In this case, Plaintiff possessed knowledge,[6] or through the exercise of due diligence should have acquired information, that should have made her suspicious of the Dalkon Shield's role in pelvic inflammatory disease. If, as Mrs. Byington reports, the information necessary to discover the dangers posed by the Dalkon Shield was available on television, and if, as previously established by other courts, *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir.1983), A.H. Robins Company already had made this information public several

---

**4.** Section 95.11 focuses on the potential plaintiff's state of mind. The relevant inquiry is when did the plaintiff know, or when should she have known, that her cause of action had accrued. Thus, in this case, the possibility that Dr. Cocotos did not know for a fact that Mrs. Byington's pelvic inflammatory disease was related to her use of the Dalkon Shield is not decisive.

**5.** The *Steiner* decision underscores this point. Had the court of appeals not expected the plaintiff to grasp the significance of his deduction that a drug caused his blindness, then it seems certain that the court's decision would have been different.

**6.** Mrs. Byington's deposition confirms that Dr. Cocotos had informed her of the potential problems associated with the IUD.

Q: In January of '76 Dr. Cocotos removed the IUD.
A: Yeah.
Q: Why was that?
A: Well he suggested that perhaps it would help the problem.
Q: What did he say the problem was?
A: Reoccurring PID [pelvic inflammatory disease].
Q: And how did he say removing your IUD might have any involving [sic].
A: He said it might alleviate—not alleviate, but it might help the problem.
He said, I suggest that you have the IUD taken out.
Q: And did you go along with that?
A: Yeah, I said I would do anything.

Defendant's Motion for Summary Judgment and Supporting Memorandum, at 2 (filed Jan. 11, 1984) (quoting deposition transcript of Dana Byington, page 85).

years before, then a diligent effort by Plaintiff between 1976 and 1981 should have led to the discovery of information sufficient to start the statute of limitations running. If this Court were to find that Plaintiff did not discover her injury until after watching a television program on the IUD in 1981, then it would be "confessing" that the lay public is on notice to believe television programming in preference to that made available by the medical profession.[7]

 Fraudulent concealment by Defendant of the link between the IUD and pelvic inflammatory disease, thereby preventing Plaintiff from discovering her cause of action, would toll the statute of limitations until the facts of such fraudulent concealment should be discovered through reasonable diligence. To successfully plead fraudulent concealment, "plaintiff must show both successful concealment of the cause of action and fraudulent means to achieve that concealment." *Nardone*, 333 So.2d at 37. Whatever fraudulent concealment existed, however, ended in 1974 when the Defendant publicly warned physicians of the possible danger associated with the Dalkon Shield and removed the product from the market. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir.1983). Moreover, the failure of a possibly responsible party to ascertain and publish the fact of its responsibility is hardly sufficient to constitute fraudulent concealment. *See Davis v. United States*, 642 F.2d 328 (9th Cir.1981), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982).

In conclusion, the Court finds that there exists no genuine issue of material fact that Plaintiff's cause of action accrued more than four years prior to the filing of the complaint. *See also Drew v. A.H. Robins Co., Inc.*, No. 82–6255–CIV–SMA (June 17, 1983). Accordingly, the Defendant's motion for summary judgment is granted, and this cause is dismissed with prejudice as to Defendant A.H. Robins Company.

---

7. *Cf. Pinkerton v. West*, 353 So.2d 102 (Fla. 4th DCA 1977).

 If any laywoman reads an article in a newspaper quoting law that affects her, it seems most obvious that she will go to her lawyer for confirmation and for clarification. In this case appellant did just that, to be told that the law of the newspaper article did not apply in Florida. We fail to see why, as a matter of law, she is charged with knowledge that her lawyer was wrong or with failure to use reasonable diligence to so discover. If we *were* so inclined we would be confessing that the lay public is on notice to believe "newspaper law" in preference to that expounded by the legal profession. Such we cannot do. *Id.* at 103.