890 So.2d 1205 (2005)
John M. TYSON, Appellant,
v.
VIACOM, INC., a Delaware corporation, Appellee.
No. 4D01-4554.
District Court of Appeal of Florida, Fourth District.
January 12, 2005.
Rehearing Denied January 12, 2005.
*1207 Mary B. Meeks of DeCubellis & Meeks, P.A., Orlando, for appellant.
Robert W. Pittman of Steel, Hector & Davis, LLP, Miami, and Lawrence P. Bemis of Kirkland & Ellis, Los Angeles, CA, for appellee.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
We grant Tyson's motion for rehearing en banc, withdraw our previous opinion, and substitute the following opinion in its place. We conclude that Tyson's claims were not barred by res judicata, the rule against splitting causes of action, or the statute of limitations, and reverse.
John Tyson appeals a final judgment entered following the trial court's order granting Viacom's motion for summary judgment. The trial court granted the motion on the grounds that Tyson's second complaint alleging breach of employment contract and fraud in the inducement was barred by the doctrine of res judicata and the statute of limitations. Because we conclude that Tyson's claims are not barred by either res judicata or the statute of limitations, we reverse.
The relevant facts of this employment dispute case are as follows. Tyson commenced employment with the Blockbuster unit of Viacom in May 1996, at which time Mark Gilman was employed as the Senor Vice-President of Strategic Analysis. The United States District Court for the District of Oregon entered an injunction and judgment against Gilman on June 27, 1996. The injunction prohibited Gilman from using or disclosing the confidential information of his former employer, Hollywood Entertainment Corporation (which operates Hollywood Video), and specifically enjoined Gilman from directing domestic field operations at Blockbuster until April 1997. Domestic fields were defined as: "the selection, construction, design or operation of stores, but shall not include corporate level systems related to such functions, so long as such systems do not direct any field personnel, but merely provide the process by which to operate."
On July 30, 1996, Tyson executed an employment agreement with Blockbuster. Tyson's agreed position was Senior Vice-President  Development  Domestic Video, and his job responsibilities were set forth in an attachment to the contract. These job responsibilities included overseeing real estate and construction programs.
After Tyson executed the employment agreement, Gilman undertook tasks specified in Tyson's job description that allegedly violated the terms of the federal injunction. On November 17, 1996, Tyson faxed documents to the federal court in Oregon detailing Gilman's activities in violation of the injunction. On November 25, 1996, Tyson's employment with Blockbuster was terminated. On February 11, 1997, Tyson filed his first complaint alleging claims for *1208 breach of contract and violation of Florida's whistle blower statute, section 448.102(2), Fla. Stat. (1991).
On June 6, 1997, the trial court dismissed Tyson's whistle blower claim with leave to amend for failure to state a cause of action. Tyson did not amend the whistle blower claim but continued to litigate the breach of contract claim. After a year and a half, Viacom filed a motion for summary judgment on the breach of contract claim, and instead of responding to the motion, Tyson voluntarily dismissed without prejudice the claim for breach of contract.
Tyson then appealed the trial court's dismissal of the whistle blower claim to this Court. We affirmed the dismissal of the whistle blower claim by opinion on June 7, 2000. See Tyson v. Viacom, Inc., 760 So.2d 276 (Fla. 4th DCA 2000). In affirming, we held that Tyson's claim did not satisfy the definitional requirements of the statute.[1]
On November 22, 2000, Tyson filed a second complaint alleging a claim for breach of contract nearly identical to that in the first complaint, and for the first time, a claim for fraud in the inducement. The following new factual allegations were included in the second complaint. Viacom was aware that accepting employment with Blockbuster would require Tyson to discontinue his law practice in North Carolina and relocate to Fort Lauderdale. Blockbuster did not disclose to Tyson that it had offered his position to Gilman but withdrew the offer due to the injunction proceedings. Blockbuster also did not inform Tyson of its intention to use him as a smoke screen to permit Gilman to perform many of Tyson's job responsibilities in violation of the injunction entered against Gilman. Blockbuster did not disclose its intention to relocate its headquarters to Texas to Tyson.
Viacom filed an answer including affirmative defenses and asserted that Tyson's breach of contract and fraud in the inducement claims were barred by res judicata and that his fraud in the inducement claim was also barred by the statute of limitations. Viacom filed a motion for summary judgment based on the res judicata and statute of limitations defenses. As to res judicata, Viacom argued that the second complaint was barred because the first and second complaints were based on identical facts, and therefore, should have been litigated in the same action.
As to the statute of limitations barring the fraud in the inducement claim, Viacom alleged that Tyson was aware of all of the facts central to the fraud in the inducement claim by November 17, 1996 when he contacted the federal court in Oregon, and therefore, the claim filed on November 22, 2000 fell outside the four-year statute of limitations so as to bar the claim.
The trial court granted Viacom's motion for summary judgment, citing three cases.[2] A final judgment based on the order was entered, and this appeal ensued.

RES JUDICATA
Res judicata has been defined as follows:

*1209 "A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action."
Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So.2d 1049, 1050 (Fla. 4th DCA 2002)(quoting Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984)). Four identities are required for res judicata to be applicable to a case: "`(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.'" Freehling v. MGIC Fin. Corp., 437 So.2d 191, 193 (Fla. 4th DCA 1983)(quoting Seaboard Coast Line R.R. Co. v. Indus. Contracting Co., 260 So.2d 860, 862 (Fla. 4th DCA 1972)).
Identity of the cause of action is the requirement at issue in the case at bar. The presence of this identity is a question of "whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So.2d 8, 12 (Fla.1984), superseded by statute on other grounds, Bowen v. Fla. Dep't of Envtl. Regulation, 448 So.2d 566 (Fla. 2d DCA 1984)(emphasis added); see U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc., 861 So.2d 74, 76 (Fla. 4th DCA 2003)(same); Gold v. Bankier, 840 So.2d 395, 397 (Fla. 4th DCA 2003)(quoting Cole v. First Dev. Corp. of Am., 339 So.2d 1130, 1131 (Fla. 2d DCA 1976)(citing Gordon v. Gordon, 160 Fla. 838, 36 So.2d 774 (1948)))("`Identity of the causes of action is established where the facts which are required to maintain both actions are identical.'")(emphasis added).
In Tyson's case, the facts necessary to prove his three claims were not identical. For purposes of illustrating this conclusion, we will discuss Tyson's whistle blower claim despite the fact that this Court in an earlier opinion concluded it was properly dismissed for failure to state a cause of action. To prove a whistle blower claim, Tyson would have had to show that he was terminated by Viacom in retaliation for his disclosure of Gilman's injunction violations. See § 448.102, Fla. Stat. Therefore, the facts and evidence necessary to maintain this claim are the existence of the injunction against Gilman, Gilman's acts in violation of the injunction, his disclosure of the violations to the federal court in Oregon, and his termination by Viacom.
To prove the breach of contract claim, Tyson had to prove the existence of the employment agreement, including the duties imposed on Viacom, and that Viacom's breach of the contract was the legal cause of his damages. See Fla. Std. Jur. Instr. (Civ.) 12.1. Therefore, the facts and evidence necessary to maintain this claim are the existence of a contract and the terms expressed in it, such as termination only for good cause, that he was terminated for other than good cause, and that he was damaged by Viacom's actions.
To prove the fraud in the inducement claim, Tyson had to prove that Viacom made a misrepresentation to Tyson regarding a material fact, that Viacom knew or should have known that the statement was false, that Viacom intended for Tyson to rely on the statement, and that Tyson suffered injury as a result of his justifiable reliance on the misrepresentation. See Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 497 (Fla. 4th DCA 2001). Therefore, the facts and evidence necessary to maintain this claim are Viacom's *1210 misrepresentations regarding Tyson's job responsibilities, Viacom's knowledge that the misrepresentations were false, Viacom's intention for the misrepresentations to induce Tyson into employment, and Tyson's damages resulting from his justifiable reliance on the misrepresentations.
A review of Tyson's three claims reveals that the facts necessary to maintain each of the claims are not identical. Although the facts may overlap to a degree, this does not result in the breach of contract and fraud in the inducement claims in the second complaint being barred by res judicata. Pre-contract misrepresentations about job duties and Tyson's termination are facts necessary to establish fraud in the inducement, but different facts support the breach of contract and dismissed whistle blower claims.
For the breach of contract claim, the only operative facts are that a contract was executed and that Tyson was terminated in breach of that contract. It does not matter that Viacom made false pre-contract representations to Tyson or that there was an injunction against Gilman. As for the dismissed whistle blower claim, the only significant facts are that an injunction existed and was violated, that Tyson reported the violations, and that Tyson was terminated. It does not matter that Tyson was employed under a contract or that misrepresentations were made about his job responsibilities. Termination may be a common ingredient of each claim, but each claim is based on different facts, as was demonstrated by Tyson's addition of facts to the second complaint that were necessary only for the fraud in the inducement claim.
Because the final judgment in the prior case addressed only the whistle blower count, res judicata does not bar the breach of contract and fraud in the inducement claims raised by Tyson in his second complaint. This is unquestionably the case because the breach of contract claim was voluntarily dismissed without prejudice. The final judgment is therefore not a determination by a court of competent jurisdiction, on the merits or otherwise, of that claim. For that reason, res judicata, by definition, cannot bar the breach of contract claim raised in Tyson's second complaint. See Froman v. Kirland, 753 So.2d 114, 116 (Fla. 4th DCA 1999)("One of the requirements for res judicata to apply is that the claim must have been adjudicated on the merits. A voluntary dismissal without prejudice will not support a claim of res judicata.")(internal citations omitted); see also Universal Constr. Co. v. City of Fort Lauderdale, 68 So.2d 366, 370 (Fla.1953)(holding that res judicata did not bar quantum meruit claim because it was not brought in the first action, according to the language of the final judgment).
In sum, we conclude that Tyson's second complaint, stating claims for breach of contract and fraud in the inducement, was not barred by res judicata.

RULE AGAINST SPLITTING CAUSES OF ACTION
The dissent, however, does not believe that this Court's analysis ends with our conclusion on res judicata. The dissent contends that Tyson's claims for breach of contract and fraud in the inducement are barred by the rule against splitting causes of action. For the following reasons, we disagree with this conclusion.
The rule against splitting causes of action is "an aspect of the doctrine of res judicata." Froman, 753 So.2d at 116 (citing Alvarez v. Nestor Salesco, Inc., 695 So.2d 941 (Fla. 4th DCA 1997)). The rule provides that: "[A]s a general rule the law mandatorily requires that all damages sustained *1211 or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all." Id. (quoting Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942), superseded by statute on other grounds as stated in, Goldman v. Kent Cleaners & Laundry, Inc., 110 So.2d 50 (Fla. 3d DCA 1959))(emphasis added).
Res judicata and impermissible splitting of causes of action are not interchangeable concepts barring the bringing of claims. Because the rule against splitting causes of action is only an aspect of res judicata, it logically follows that if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either. Said another way, one who impermissibly splits causes of action may run afoul of res judicata, but one who runs afoul of res judicata may not have done so by impermissibly splitting causes of action, as the claim could be barred based on another aspect of res judicata. See State v. Freund, 626 So.2d 1043, 1045 n. 1 (Fla. 4th DCA 1993)(stating that collateral estoppel is an aspect of res judicata); Saenz v. Saenz, 602 So.2d 973, 974 n. 1 (Fla. 3d DCA 1992) (stating that the "change of circumstance" rule is an aspect of res judicata).
Even if this were not the case, the claims at stake are not the result of "a single wrongful act." Only the fraud in the inducement claim is a result of any wrongful misrepresentations regarding Tyson's job responsibilities. The breach of contract and dismissed whistle blower claims could exist even if Viacom did not make such representations. The alleged wrongful contract breach for termination in the absence of good cause is of no moment to whether fraud in the inducement or a whistle blower violation occurred. This is the case even though the dismissed whistle blower claim requires termination, because that claim does not rest on the breach of a contract.
Likewise, only the dismissed whistle blower claim requires a wrongful retaliatory termination. Although the breach of contract claim requires termination, this claim does not rest on wrongful retaliation. Each of the three claims is based on separate wrongful acts, each of which could have occurred without the other. It is true that they all occurred in the course of Tyson's employment, but the course of employment was not itself the wrongful act giving rise to Tyson's claims. It is merely Tyson's uncharmed misfortune to suffer three potential claims within the course of one employment relationship.
The dissent, in its combined consideration of res judicata and the rule against splitting causes of action, also makes much of its contention that Florida follows a "transactional" approach when considering such affirmative defenses. The dissent defines the "transactional" approach with federal case law, such as Welch v. Johnson, 907 F.2d 714 (7th Cir.1990), which indicates that even where claims are stated based on different legal theories, they still constitute one cause of action "if a single group of operative facts give rise to the assertion of relief." Id. at 720.
In the present case, Tyson's three claims plainly are not based on "a single group of operative facts." The facts supporting the three claims have no relationship to each other, except that they all occurred within the context of an employment relationship. The group of operative facts giving rise to the fraud in the inducement claim is different from that giving rise to the breach of contract claim which is different from that giving rise to the dismissed whistle blower claim. The case at bar can be distinguished from cases cited by the dissent, because unlike the example in Nunley v. Kloehn, 158 F.R.D. *1212 614 (E.D.Wis.1994), this is not a case alleging two types of discrimination or two types of discrimination-based termination. Id. at 617. Rather, in this case, Tyson alleged one type of fraud in the inducement, one type of breach of contract, and one type of whistle blower termination. As a result, it cannot be said that Tyson's entire employment relationship, from pre-contract negotiations to termination, constitutes a single transaction. See Scovell v. Delco Oil Co., 798 So.2d 844, 846 (Fla. 5th DCA 2001) (landlords did not split cause of action by bringing two separate actions under single lease, one for accelerated payment of rent and one for failure to remove petroleum storage equipment); Bryant v. Allstate Ins. Co., 584 So.2d 194 (Fla. 5th DCA 1991) (insured does not split cause of action by suing separately for breach of individual coverage issues contained in single insurance policy); Popwell v. Abel, 226 So.2d 418 (Fla. 4th DCA 1969) (separate suits on check and breach of contract under which check was issued did not improperly split cause of action).
Even if the claims at bar were based on a single transaction, the cases cited by the dissent do not compel its conclusion. Signo v. Florida Farm Bureau Casualty Insurance Co., 454 So.2d 3 (Fla. 4th DCA 1984), and Huff Groves Trust, are cases dealing with the rule against splitting causes of action. That rule, being only an aspect of res judicata, is necessarily limited in scope to the question of whether the claims arise from "a single wrongful act," or a transaction giving rise to multiple claims; for example, for two types of employment discrimination or both physical and property damage in a motor vehicle accident case. Therefore, these cases are not determinative of the manner in which Florida courts consider the applicability of the broader principle of res judicata, especially to a case involving three distinct claims and sets of operative facts.
This conclusion is grounded in the interplay of res judicata and the rule against splitting causes of action aspect of res judicata. Res judicata defines a cause of action in terms of identical facts. See Gold, 840 So.2d at 397. The rule against splitting causes of action defines a cause of action in terms of a single wrongful act. See Froman, 753 So.2d at 116. Within one set of identical facts, three wrongful acts could exist. In such a circumstance, bringing separate claims in separate complaints based on each wrongful act would not run afoul of the rule against splitting causes of action. However, this factual scenario would still run afoul of res judicata because the three separate claims would be based on identical facts. This hurdle is overcome where there are three separate sets of facts in addition to three separate wrongful acts. In such a circumstance there are three claims, each of which constitutes an independent cause of action capable of being raised in separate complaints. Therefore, neither res judicata nor the rule against splitting causes of action will bar a second complaint including two claims in such a circumstance.
The reality that the three separate sets of facts may exist within a larger set of facts, such as an employment relationship, is no obstacle to this conclusion, because "the whole is more than the sum of its parts." Aristotle, Metaphysica. Other facts exist in the context of the whole, so that the whole is not identical to any of its three component sets of facts, just as they are not identical to each other. If this were not our approach to res judicata, a slippery slope could soon bar a range of suits related only by the broadest of contexts, such as the provision of medical care and treatment by all types of professionals to all patients for all ailments.
As a result of the foregoing analysis, we conclude that the rule against splitting *1213 causes of action is no bar to Tyson's breach of contract and fraud in the inducement claims.

STATUTE OF LIMITATIONS
The statute of limitations for a fraud in the inducement claim is four years. See § 95.11(3)(j), Fla. Stat. Section 95.031(2)(a) addresses the accrual of a claim for fraud in the inducement and provides that it occurs when "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."
In this case, the statute of limitations issue hinges on when Tyson suffered the injury as a result of his justifiable reliance on the misrepresentations. Tyson did not suffer any injury until he was terminated, allegedly in retaliation for reporting the injunction violations, on November 25, 1996. See Food Fair, Inc. v. Anderson, 382 So.2d 150, 154-155 (Fla. 5th DCA 1980)(circumstances of employment termination may constitute injury for purposes of a fraud in the inducement claim). Tyson may have been aware of the misrepresentations and the smoke screen scheme, but that awareness alone did no injury to him. He could not be expected to anticipate his termination simply because his work environment was less than ideal. See Byington v. A.H. Robins Co., 580 F.Supp. 1513, 1515 (S.D.Fla.1984)(citing Steiner v. Ciba-Geigy Corp., 364 So.2d 47, 53 (Fla. 3d DCA 1978))("the plaintiff is on notice only after she has suffered damage or injury (`trauma')."). Therefore, Tyson's claim for fraud in the inducement did not accrue until November 25, 1996 when he suffered the injury of termination. Thus, the complaint filed on November 22, 2000 fell within the four-year statute of limitations. As a result, Tyson's claim was not barred by the statute of limitations.
In sum, the trial court erred by granting Viacom's motion for summary judgment and entering final judgment. Tyson's claims for breach of contract and fraud in the inducement are not barred by res judicata, because they are not based on identical facts. The claims also are not barred by the rule against splitting causes of action because that rule is only an aspect of res judicata and the claims in this case do not result from a "single wrongful act." Nor is the fraud in the inducement claim barred by the statute of limitations, because the claim accrued and the statute began to run only upon Tyson's termination. Therefore, we reverse and remand.
For the reasons expressed in the specially concurring opinion of Judge Gross, we hereby recede from our prior decisions in Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So.2d 1049 (Fla. 4th DCA 2002), Florida Patient's Compensation Fund v. St. Paul Fire & Marine Insurance Co., 535 So.2d 335 (Fla. 4th DCA 1988), and Thermofin, Inc. v. Woodruff, 491 So.2d 344 (Fla. 4th DCA 1986), all of which are in conflict with our holding in this case.
REVERSED AND REMANDED for further proceedings consistent with this opinion.
FARMER, C.J., GUNTHER, WARNER, KLEIN, STEVENSON, SHAHOOD, GROSS and TAYLOR, JJ., concur.
GROSS, J., concurs specially with opinion, in which FARMER, C.J., WARNER, KLEIN and SHAHOOD, JJ., concur.
MAY, J., dissents with opinion, in which POLEN, J., concurs.
STONE, J., concurs in part and dissents in part with opinion.
HAZOURI, J., recused.
*1214 GROSS, J., concurring specially.
The majority and dissent have delved into a confusing and difficult area of Florida law. I concur in the result of the majority. I write for three reasons  first, to identify language in res judicata cases that has created analytical problems when misapplied; second, to identify three decisions of this court that conflict with this opinion; and third, to suggest a certified question that might clarify the test to be applied in deciding whether a plaintiff has contravened the rule against splitting causes of action.
The job of the court in this case is not to implement a policy of what the law should be, but to ascertain the state of the law and to express it in an understandable form. Florida Supreme Court cases control the result in this case. Confusion has arisen because of imprecise language used by district courts of appeal.

Res judicata
Florida Supreme Court cases apply two tests for res judicata that operate side-by-side and are not inconsistent with each other.
First, as the majority writes, if four identities are present, then res judicata always applies. The four identities are: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made." See, e.g., Palm AFC Holdings, Inc. v. Palm Beach County, 807 So.2d 703, 704 (Fla. 4th DCA 2002).
"`Identity of the causes of action is established where the facts which are required to maintain both actions are identical.'" Gold v. Bankier, 840 So.2d 395, 397 (Fla. 4th DCA 2003) (quoting Cole v. First Dev. Corp. of Am., 339 So.2d 1130, 1131 (Fla. 2d DCA 1976) (citing Gordon v. Gordon, 160 Fla. 838, 36 So.2d 774, 776 (1948))); see also Jackson v. Bullock, 62 Fla. 507, 57 So. 355 (1912) (where court wrote that "[t]he test of the identity of causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the suits").
The supreme court has also applied a transactional test in res judicata cases. Under this second test, there is an identity of the cause of action not only as to every question which was decided in an earlier lawsuit, but "also as to every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter" of the first litigation. Hay v. Salisbury, 92 Fla. 446, 109 So. 617, 621 (1926). This second test is extremely narrow, without the breadth suggested by the dissent.
As the majority reasons, application of the four identities test to this case compels the conclusion that res judicata does not bar the second lawsuit. This is so because the facts necessary to a statutory whistleblower claim are different from those essential to the fraudulent inducement or breach of contract claims.
In addition to those cases cited by the majority, two opinions directly support this conclusion.
Quinn v. Advanced Lighting Products, Inc., 340 So.2d 1213 (Fla. 4th DCA 1976), was a case where Quinn did not prevail at a jury trial on a breach of oral contract claim against a corporate defendant. After the rendition of the verdict, Quinn filed a "quantum meruit action" against the same defendant. The trial court granted the defendant's motion for summary judgment "based upon the doctrine of res judicata." Id. at 1214.
*1215 This court reversed, holding that "the action seeking recovery on quantum meruit was not barred by the doctrine of res judicata." Id. We explained that we were following "[t]he general rule that a judgment for defendant will not bar a subsequent action by plaintiff based on a new and more correct theory." Id. (citation omitted). Under the four identities test for res judicata, there was no identity of cause of action in Quinn; the facts necessary to prove the quantum meruit claim were not identical to those required to maintain the breach of oral contract claim. Id.
In Cole, the second district reached a conclusion similar to the one we reached in Quinn. The Cole plaintiff filed a specific performance action seeking conveyance of a parcel of real property; that case was decided for the defendant because the underlying contract violated the statute of frauds. The plaintiff then filed a second suit alleging that the same defendant had committed the tort of fraud. The trial judge granted summary judgment in favor of the defendant, finding that the second "action was barred by res judicata." 339 So.2d at 1130.
The second district reversed because "the facts necessary to allege and prove the fraud and deceit action [were] contradictory to those necessary to sustain the contract action." Id. at 1131. The court held that the "obvious difference between the facts essential to each of these two causes of action precludes the application of the doctrine of res judicata." Id. The court observed that "it may be the preferred practice to allege all of a party's causes of action in one complaint, but the Florida Rules of Civil Procedure do not require that it be done." Id.
Both Quinn and Cole support the majority's conclusion that for there to be identity of causes of action under res judicata, the facts required to maintain both causes of action must be identical.
The dissent relies upon another line of cases based upon language from Wade v. Clower, 94 Fla. 817, 114 So. 548 (1927), to argue for a broader, transactional approach to res judicata analysis than that employed by the majority.[3] Examination of this line of cases reveals that the transactional test is not as broad as the dissent would have it.
According to the supreme court, since Wade, Florida courts have uniformly held that,
a judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984) (quoting Wade, 114 So. at 552) (citations omitted) (emphasis added). The language quoted from Wade related to the issue of whether a federal judgment precluded a state court from awarding attorney's fees. The supreme court did not use the language as part of a traditional res judicata analysis.
One might argue that under the emphasized language from Wade, the fraudulent inducement and breach of contract causes of action might "with propriety have been litigated and determined" in the whistleblower action. If such a transactional approach were applied, one could argue that *1216 all three causes of action arose out of one transaction or series of transactions  the employment relationship between Tyson and Blockbuster  such that res judicata would bar the second suit. However, supreme court precedent requires a more narrow reading of the "transactional" res judicata cases.
The most important case applying a transactional analysis to decide whether there is an identity between two causes of action is Hay, decided the year before Wade. In that case, Salisbury filed a bill of complaint to quiet title in real property against the claims of Hay under an alleged purchase contract. Hay, 109 So. at 621. Hay did not appear or defend the lawsuit. Judgment was entered in favor of Salisbury.
After the entry of the final decree, Hay filed suit against Salisbury seeking specific performance of the same purchase contract involved in the quiet title suit. Salisbury defended by arguing that res judicata barred the second suit. One of Hay's arguments was that she had not appeared and litigated her specific performance claim in the quiet title action.
The supreme court held that Hay's specific performance action was barred by res judicata. The court wrote that "the very rights" she asserted in the specific performance action "would, if proved, have been a defense" in the earlier quiet title suit. Id. The court found an "identity of the causes of action" because:
[t]he same facts that would entitle [Hay] to have [Salisbury] specifically perform the alleged verbal agreement or contract to convey the property in controversy would have prevented [Salisbury] from having his title cleared [in the quiet title suit] as against the rights claimed under the agreement.
Id. The supreme court then set out two paragraphs[4] describing the law governing this area:
The test of the identity of causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the suits.
When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive in the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject-matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties. This rule applies to every question falling within the purview of the original action, both in respect to matters of claim and defense, which could have been presented by the exercise of due diligence.
Id. (citations omitted) (emphasis added).
Like Wade, Hay indicates that a judgment in an action is conclusive "as to every other matter which the parties might have litigated and had determined." 109 So. at 621. However, Hay limits the scope of res judicata with the prepositional phrase "within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject-matter of the litigation." Id. This language emphasizes the close-connectedness *1217 required between causes of action in order to apply res judicata. Res judicata does not bar any action between the same parties not filed in the original lawsuit; the doctrine bars only a cause of action "within the issues" framed by the pleadings in the first suit or "essentially connected" with the subject matter of the first suit. Id. Because it is located between words of limitation ("within" and "essentially connected"), the phrase "incident to" does not expand the narrow scope of the test.
Thus, in Hay, res judicata was a defense to the second specific performance suit because the enforceability of the alleged contract was "incident to or essentially connected" to the defense of the earlier quiet title suit. Id. The quiet title suit was directed at extinguishing any claim that Hay had under the purported contract. The quiet title suit could not have been resolved without addressing the validity of the contract for which Hay later sought specific performance.
The supreme court has never applied res judicata in a way that alters the holding of Hay.[5]
In re Haskin's Estate, 63 So.2d 320 (Fla.1953), involved a probate proceeding where Alice Siems filed a claim to the entire estate on the theory that the decedent had promised during his lifetime to make Siems his sole beneficiary. A final probate court order determined that Siems had "no valid claim against the estate of the [d]ecedent." Id. at 321. Siems later filed for a declaratory decree determining that she was the common-law wife of the decedent at the time of his death. The action was dismissed by the probate court.
The supreme court affirmed the dismissal, holding that the first judgment in the probate proceeding was res judicata as to the lawsuit for declaratory relief. Id. The court observed that the judgment in the earlier probate case established that the brother and sister of the decedent were entitled to his estate and that Siems "had no valid claim to it whatever." Id. In the second suit, Siems sought the estate as the common-law wife of the deceased, but, as the supreme court wrote, "nothing [was] presented in the second case that might not have been properly presented and settled in the first case." Id.
Haskin's Estate is consistent with Hay. Siems' claim of a common-law marriage to the decedent was "essentially connected" to the earlier probate proceeding because it formed the basis of a claim to the estate. As such, the supreme court held that the claim should have been raised in the probate action. This holding complements the policy of expeditiously resolving a person's claim against an estate, on whatever grounds might exist, in a single probate proceeding.
A third supreme court case following Hay is Woodson v. Woodson, 89 So.2d 665 (Fla.1956). There a widow brought a wrongful death action arising from the death of her husband in a truck accident; she alleged that the defendant committed "gross negligence" by failing to stay awake while driving the truck. Id. at 666. The trial court granted the defendant's motion for summary judgment and the widow took no appeal.
The widow filed a second wrongful death suit against the same defendant based on the same accident; she "charged simple negligence" arising out of a "relationship of private carrier for hire and passenger existed between the defendant and plaintiff's husband." Id. The trial court granted *1218 the defendant's motion for summary judgment on the ground of res judicata.
The supreme court affirmed, holding that "the widow could [not] maintain the second action for the wrongful death of her husband grounded on simple negligence after the first suit based on gross negligence under [the] wrongful death statute resulted in judgment for defendant for which no appeal was taken." Id. The court noted that the second suit was the widow's second attempt to recover under the wrongful death statute. Just as the supreme court in Haskin's Estate required a party to pursue all of her claims against an estate in one probate proceeding, so did the court in Woodson require a party to include all of her factual theories supporting a statutory cause of action in one lawsuit.
The facts of this case do not fit within the narrow confines of the Hay transactional analysis. Unlike Hay, the fraud and breach of contract causes of action were not "incident to or essentially connected" with the whistleblower claim; the whistleblower claim could be presented without reference to the subject matter of the later claims. Unlike Haskin's Estate, the whistleblower action was not a probate proceeding which required all theories of recovery against the estate to be asserted at one time. Unlike Woodson, the second lawsuit in this case did not involve alternative theories of recovery under a single, statutory cause of action.
This court followed Woodson and applied a transactional analysis to evaluate a res judicata claim in Signo v. Florida Farm Bureau Casualty Insurance Co., 454 So.2d 3 (Fla. 4th DCA 1984). There, Signo's car collided with a truck. Signo wanted to hold a produce company and a farm liable for the negligence of the driver of the other vehicle. In her first lawsuit, Signo alleged: (1) that the driver was an employee of the farm and the produce company and, alternatively, (2) that the farm had negligently selected the driver as an independent contractor. The trial court entered a summary judgment in favor of the farm and the produce company.
After unsuccessfully appealing the claims, Signo filed a second lawsuit against the produce company and the farm. The complaint alleged that the defendants were bailees of the truck and were liable for the negligence of the driver who drove with their permission. The trial court granted the defendants' motion for summary judgment.
We affirmed, writing that "the mere changing of the theory on which the plaintiff proceeds does not constitute a distinct and different cause of action obviating the defense of res judicata." Id. at 5. We adopted the test set forth in the Restatement of the Law of Judgments that a final judgment in a case extinguishes all rights of the plaintiff "to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (quoting Restatement of Judgments § 24(1)) (emphasis added).
We stated that the crucial "transaction" in Signo was "the collision between [the truck driver] and [the plaintiff]," and held that all "theories" seeking to hold the farm and produce company liable for the conduct of the driver had to have been raised in the original lawsuit. Id. At the time of the collision, any relationships between the defendants that might have given rise to liability for the conduct of the driver already existed.
Signo should be read as following Woodson in that the case requires all theories giving rise to one cause of action (negligence) to be asserted in one lawsuit.
*1219 One of our more recent cases employs too broad a transactional approach, so that it is in conflict with both Quinn and the case at bar. In Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So.2d 1049 (Fla. 4th DCA 2002), the plaintiffs filed a cause of action for breach of contract against a citrus company. A jury found for the plaintiffs and awarded damages. Then, the plaintiffs filed a second suit against the citrus company for civil theft. The trial court held that the civil theft suit was barred under res judicata.
We affirmed holding that:
[r]es judicata bars this action for civil theft. This action is merely a different theory of liability based upon the same transactions out of which the breach of contract arose. Therefore, it should have been included within the breach of contract action.
Id. at 1050.
In Huff, we did not apply the "identity of cause of action" test that we used in Quinn; the evidence necessary to maintain a breach of contract claim is obviously different from those facts necessary to prove a civil theft. On a continuum of factual similarity, the quantum meruit cause of action that we permitted in Quinn was a lot closer to the original breach of contract action than the civil theft claim that was barred in Huff.
Unlike Signo, civil theft is not a different factual theory of recovery under the earlier breach of contract action. Huff is based on a loosely applied transactional approach, that the civil theft claim arose out of the same series of connected transactions between the parties that formed the basis of the breach of contract claim. Such an approach goes well beyond any supreme court case on the subject.
Quinn and Huff are in conflict and we should use this en banc decision to recede from Huff.

Splitting A Cause of Action
The doctrine against splitting causes of action has no application to this case. The fraudulent inducement and contract counts are entirely separate causes of action from the whistleblower claim, so no cause of action was improperly split. As developed in Florida, splitting a cause of action means that a plaintiff has used the same cause of action to seek damages in different lawsuits.
In Mims v. Reid, 98 So.2d 498 (Fla.1957), the supreme court adopted the majority view that prohibits splitting causes of action:
The law does not permit the owner of a single or entire cause of action or an entire indivisible demand to divide or split that cause of action so as to make it the subject of several actions, without the consent of the defendant. All damages sustained or accruing to one as a result of a single wrongful act must be claimed or recovered in one action or not at all. The law presumes that a single cause of action can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one action against the same party for the same cause. This rule is founded on the plainest and most substantial justice  namely, that litigation should have an end, and that no person should be unnecessarily harassed with a multiplicity of suits. If the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary and consequently vexatious. The rule against splitting causes of action is closely related to the doctrine of res judicata in this respect.
Id. at 500-01 (citation omitted).
For the purpose of applying the rule against splitting a cause of action, "cause *1220 of action" is defined as "the right which a party has to institute a judicial proceeding."[6]Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591, 593 (Fla.1956). This definition is narrower than the "same transaction" test described in the dissent; it is more akin to the dissent's definition of a "claim" or theory of relief.
In applying the rule against splitting a cause of action, Florida's adoption of a narrow view of a "cause of action" is illustrated by cases that bar a plaintiff from bringing separate suits for damages arising out of the same tort. See DeCarlo v. Palm Beach Auto Brokers, Inc., 566 So.2d 318 (Fla. 4th DCA 1990) (holding that plaintiff's suit for personal injuries arising from automobile accident was barred by uninsured motorist insurer's subrogation lawsuit against same defendant); McKibben v. Zamora, 358 So.2d 866 (Fla. 3d DCA 1978) (concluding that plaintiff had improperly split cause of action by filing separate negligence lawsuits seeking to recover damages to property and for personal injury); Unger v. Bergness, 172 So.2d 627 (Fla. 3d DCA 1965) (holding that plaintiff was precluded from filing separate suits for injuries to his dog and for his dog's death arising out the same attack by the defendant's dog); compare Bowie v. Reynolds, 161 So.2d 882, 884 (Fla. 1st DCA 1964) (where the court did not apply a "same transaction" approach when it wrote that "[a]lthough it is the identical tortious act of appellant which caused the death of appellee's wife and inflicted upon appellee personal injuries ... and property damage ... such act gave rise to two separate and distinct causes of action").
The leading case of Shearn arose out of a traffic accident where William Shearn was killed and his wife, a passenger in the same vehicle, was injured. 88 So.2d at 592. The wife filed suit as executrix of her husband's estate seeking damages for the pain and suffering of her husband. She brought a second suit as a widow seeking damages for the death of her husband. These two suits were consolidated and tried together, resulting in verdicts for the wife.
After the return of these verdicts, the wife filed a third lawsuit against the same defendant to recover for damages to her automobile and for her personal injuries. Under a statute no longer in force, the trial judge certified questions to the supreme court concerning the preclusive effect of the earlier lawsuits upon the third.
As to the wife's claim, the supreme court held that the rule against splitting a cause of action did not apply. The court wrote that the wife was "not suing here for different elements of damage of the same cause of action, but is maintaining this separate suit on a separate cause of action arising out of the same incident or occurrence." Id. at 593. The court observed that the wife's right of recovery under the wrongful death act was an entirely separate cause of action from "her common law right to redress for injury to her person and property." Id.; see also Bowie, 161 So.2d at 884 (holding that widower did not split cause of action by filing wrongful death suit concerning death of his wife separately from his own claim for damages arising out of an automobile accident).
Significantly, the supreme court in Shearn did not adopt a "same transaction," fact-based approach and treat the automobile accident as a single "cause of action," which could not be split into the wrongful *1221 death and common law negligence lawsuits.
Many cases quote the following sentence from Mims: "All damages sustained or accruing to one as a result of a single wrongful act must be claimed or recovered in one action or not at all." See, e.g., Scovell v. Delco Oil Co., 798 So.2d 844, 846 (Fla. 5th DCA 2001); Bryant v. Allstate Ins. Co., 584 So.2d 194, 195 (Fla. 5th DCA 1991). When the quote is taken out of context, one might argue that an automobile accident constitutes a "single wrongful act," such that all damages arising from the incident must be joined in a single suit, no matter how many causes of action arise from the incident.
This was precisely the argument the defendant made in Bryant, a case arising out of an automobile accident. The plaintiff sued Allstate for property damages, to recover the cost of repairing her car. The plaintiff settled a second suit with Allstate for personal injury protection benefits. The plaintiff's third lawsuit against Allstate was for uninsured motorist benefits. Arguing that the plaintiff had split her cause of action, Allstate had the third lawsuit "stricken." 584 So.2d at 195.
On appeal, Allstate argued that the "single wrongful act" under the rule quoted above was "the automobile accident and thus all damages arising therefrom should have been joined in a single suit." Id. The fifth district rejected that argument, holding that the uninsured motorist provision of the insurance contract was a cause of action separate from the policy provisions that formed the bases of the earlier lawsuits. Id. The court noted that had the plaintiff "attempted to sue the tort-feasor for personal injury claims in one suit and property damages in a separate action, then [the plaintiff] would properly have been precluded from bringing" the third lawsuit. Id.; see Almeroth v. Gov't Employees Ins. Co., 587 So.2d 550, 552 (Fla. 4th DCA 1991) (following Bryant).
A source of confusion has been the injection of the transactional test from the res judicata cases into cases enforcing the rule against splitting a cause of action.
Thus, in Florida Patient's Compensation Fund v. St. Paul Fire & Marine Insurance Co., 535 So.2d 335, 338 (Fla. 4th DCA 1988), we wrote that "one cannot revisit the same transaction or occurrence, already adjudicated between the same parties, by resort to a new legal theory in a separate lawsuit. To do so is an impermissible splitting of causes of action." Similarly, we wrote in Thermofin, Inc. v. Woodruff, 491 So.2d 344, 345 (Fla. 4th DCA 1986) that the "rule against splitting causes of action requires that all relief arising out of a single transaction or event be sought, and recovered, in one action." Thermofin states the rule too broadly and erroneously seems to equate a "cause of action" with a transaction or event that could give rise to multiple "causes of action" under the supreme court's definition in Shearn.
The confusion has arisen because of the similarities in the policies behind the doctrine and the rule. Mims contains the sentence: "The rule against splitting causes of action is closely related to the doctrine of res judicata." 98 So.2d at 501 (citation omitted). As the supreme court has explained, the rule against splitting a cause of action is based upon the policy that "litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits." Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942) (citation omitted). Similarly, the doctrine of res judicata "is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action *1222 in order that the courts and the parties will not be [b]othered for the same cause by interminable litigation." Gordon v. Gordon, 59 So.2d 40, 44 (Fla.1952).
In spite of this similarity in purpose, the supreme court has not used the same analysis for res judicata and splitting cause of action cases. No splitting cause of action case from the supreme court uses either a transactional or identities analysis. No supreme court case has altered Shearn's definition of a cause of action.
The first case that appears to have merged a transactional res judicata test into a splitting cause of action analysis is Greenstein v. Greenbrook, Ltd., 443 So.2d 296 (Fla. 3d DCA 1983). There the court held that a plaintiff had improperly split claims for breach of contract and tortious interference with a contract, even though the tort and contract counts involved different causes of action. This court similarly merged the tests in Huff Groves, a case that involved a dismissal on res judicata grounds, but where we wrote that a second action was "barred by the prohibition against splitting causes of action and res judicata." 810 So.2d at 1050 (emphasis added).
If I were writing on a blank slate for splitting cause of action cases, I would adopt a form of the "same transaction" test suggested by the dissent and applied by this court in Florida Patient's Compensation Fund and Thermofin. The policy behind the rule  avoiding a multiplicity of suits  is better served by a rule that encourages parties to include all theories of relief arising from a transaction in one lawsuit.
A good approach would be to adopt the same analysis in splitting cause of action cases that the supreme court has applied in deciding whether a counterclaim is "compulsory" under Florida Rule of Civil Procedure 1.170(a). Like the rule against splitting causes of action, the purpose of the compulsory counterclaim rule is to "promote judicial efficiency." Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 (Fla.1992). In Londono, the supreme court adopted the "logical relationship" test to determine whether a counterclaim is compulsory or permissive. Id. at 20. Modified to apply to the splitting cause of action rule, that test would be as follows:
[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a [plaintiff] that would otherwise remain dormant.
Id. (emphasis omitted). Applying this modified test would still not change the result reached by the majority in this case.
As indicated above, the Florida Supreme Court has not adopted a transactional definition of a "cause of action" for the purpose of applying the rule against splitting a cause of action. We therefore should recede from Florida Patient's Compensation Fund and Thermofin to the extent that they are inconsistent with this opinion.
In light of the confusion in this area, in the right case, this court should certify the following question:
TO DECIDE WHETHER A PLAINTIFF HAS IMPROPERLY SPLIT A CAUSE OF ACTION, SHOULD A COURT APPLY THE "LOGICAL RELATIONSHIP" TEST OF LONDONO V. TURKEY CREEK, INC., 609 SO.2D 14, 19 (FLA.1992)?
Because application of the Londono test would not change the result, I do not propose that it be certified in this case.
*1223 MAY, J., dissenting.
I respectfully dissent. "To make a matter res judicata, there must be a concurrence of the following conditions: 1) identity of the thing sued for, 2) identity of the cause of action, 3) identity of the persons and parties to the actions, and 4) identity of the quality or capacity of the person for or against whom the claim is made." ICC Chem. Corp. v. Freeman, 640 So.2d 92, 93 (Fla. 3d DCA 1994). The rule against splitting a cause of action is an aspect of the doctrine of res judicata. Froman v. Kirland, 753 So.2d 114, 116 (Fla. 4th DCA 1999); see also Alvarez v. Nestor Salesco, Inc., 695 So.2d 941 (Fla. 4th DCA 1997).
When the identity of the cause of action is the same under the doctrine of res judicata, then the prohibition against splitting a cause of action prevents the severance of claims into separate law suits. Conversely, if there is no identity of the cause of action, then the doctrines of res judicata and splitting a cause of action are inapplicable.
The plaintiff argued the whistle blower cause of action does not have the same identity as the breach of contract and fraud in the inducement causes of action. The defendant argued that all three claims arose out of the same cause of action. Thus, allowing the plaintiff to pursue the fraud in the inducement claim in the second amended complaint violates the rule against splitting a cause of action.
One of the difficulties in this case lies in the use of the terms. The terms "claim for relief," "claim," and "cause of action" have been used so interchangeably over the years in both case law and rules of procedure, it is difficult to tell them apart. Indeed, the parties in this case have also used them interchangeably.
Blacks Law Dictionary defines cause of action "as [a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." BLACKS LAW DICTIONARY 214 (7th ed.1999). Florida case law has similarly identified "the determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So.2d 8, 12 (Fla.1984).
The United States Court of Appeals for the Seventh Circuit and other federal courts have relied upon the "same transaction" test to illustrate the difference between a claim and cause of action. Lim v. Cent. DuPage Hosp., 972 F.2d 758 (7th Cir.1992); Nunley v. Kloehn, 158 F.R.D. 614 (E.D.Wis.1994). Under that test, multiple claims or theories of relief constitute a single cause of action if a single group of operative facts gives rise to the relief requested. Welch v. Johnson, 907 F.2d 714, 720 (7th Cir.1990).
A "cause of action," then, is the sequence of factual events giving rise to a lawsuit, while a "claim" (or "count") is the legal theory under which relief is sought.
In many lawsuits, or causes of action, the plaintiff only brings one claim, or legal theory, for relief; in such cases, the terms "cause of action" and "claim" are often used interchangeably as labels for the parties legal proceedings. In other actions, however, a single cause of action, or lawsuit, may consist of many different claims, or legal theories of relief; a fired employee, for example, may bring claims of age and sex discrimination in the same proceeding, or bring claims of termination based on harassment and retaliatory motives. Under these circumstances, it would indeed be misleading to equate these *1224 terms; the sequence of factual occurrences gives rise to a single cause of action which, in turn, is comprised of several claims, or legal theories of recovery. A cause of action, then, may contain numerous claims, while a single claim may or may not constitute a single cause of action.
Nunley, 158 F.R.D. at 617 (emphasis added in original).
Florida courts have not placed a label on their approach, but have discussed the doctrine of res judicata in terms of a transaction. Indeed, this court has done so. Signo v. Fla. Farm Bureau Cas. Ins. Co., 454 So.2d 3, 5 (Fla. 4th DCA 1984) ("From one episode or transaction one cause of action emerges, though different theories of liability may exist."); see also Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So.2d 1049, 1050 (Fla. 4th DCA 2002) ("This action is merely a different theory of liability based on the same transactions out of which the breach of contract action arose.").
In this case, the plaintiff alleged the same set of operative facts in each count of his respective complaints. What distinguished one count (or claim) from the other, was the manner in which the facts were used to support the requisite elements to state a claim for relief. "The fact that the elements of proof in the context of [one claim] differ from those at issue in [plaintiffs other claim] is not a basis on which we [should] hold res judicata to be inapplicable." Davila v. Delta, 326 F.3d 1183, 1188 (11th Cir.2003).
Thus, our inquiry should be whether the whistle blower, breach of contract, and fraud in the inducement claims arose from the same set of operative facts, a/k/a the cause of action. The answer becomes clear when the term cause of action is examined in light of the goal the doctrine of res judicata was designed to achieve.
Res judicata and its sub-part, the rule against splitting a cause of action, were designed to avoid multiple lawsuits and piecemeal litigation. They were designed to promote judicial efficiency and economy of the law. "[T]he rule is founded upon the plainest and most substantial justice namely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits." Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942); see also Lobato-Bleidt v. Lobato, 688 So.2d 431 (Fla. 5th DCA 1997).
Florida law has consistently promoted the philosophy of judicial efficiency in the rules concerning compulsory counterclaims and those established to avoid piecemeal appeals. See, e.g., Fla. R. Civ. P. 1.170(a); Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 (Fla.1992) ("The purpose of the compulsory counterclaim is to promote judicial efficiency by requiring defendants to raise claims arising from the same `transaction or occurrence'...."); Mendez v. W. Flagler Family Assn., 303 So.2d 1, 5 (Fla.1974) ("We adhere to the rule that piecemeal appeals should not be permitted where claims are legally interrelated and in substance involve the same transaction....").[7]
Each of these rules shares the common goal of judicial efficiency. It is for this reason that "[r]es judicata applies to all matters actually raised and determined as well as to all other matters which could properly have been raised and determined in the prior action, whether they were or not." ICC Chem. Corp., 640 So.2d at 93; see also State v. McBride, 848 So.2d 287, 290 (Fla.2003) ("Res judicata ... prohibits not only relitigation of claims raised but *1225 also the litigation of claims that could have been raised in the prior action.") (emphasis in original).
The plaintiff included the breach of contract claim in the first complaint. He knew of the fraud in the inducement claim prior to his voluntary dismissal of the breach of contract claim and "could have" amended the complaint to include it. "[B]oth claims grew out of a common nucleus of operative fact: ... a series of transactions closely related in time, space, and origin." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1240 (11th Cir.1999). Yet, he chose to pursue the whistle blower claim to its conclusion and obtain an adjudication on its merits while he temporarily set aside the other two claims. Because the whistle blower claim shared its operative facts with the breach of contract and fraud in the inducement claims, its adjudication on the merits necessarily disposed of the entire cause of action. This is true despite the fact that the breach of contract and fraud in the inducement claims were never independently adjudicated on their merits.
Enter the rule against splitting a cause of action. If "a party voluntarily drops a claim in a first action and then later seeks to maintain a separate second action on the abandoned claim, the rule against splitting causes of action applies to preclude that party from maintaining the second suit on the abandoned claim." Dade County v. Matheson, 605 So.2d 469, 472 (Fla. 3d DCA 1992). While the facts of Matheson are not identical to the facts in this case, the rule of law announced is instructive.
In short, the plaintiff had two choices when the court dismissed the whistle blower claim. He could forgo the appeal of the non-final order dismissing the whistle blower claim, pursue the other claims (breach of contract and fraud in the inducement), and raise the dismissal along with any other issues upon final disposition of the entire cause of action. In fact, he did pursue the breach of contract claim for more than a year and a half following dismissal of the whistle blower claim. He voluntarily dismissed the breach of contract claim just before the hearing on the defendants motion for summary judgment.
Alternatively, the plaintiff could, and did, choose to obtain a final adjudication on the merits of the cause of action by obtaining a final judgment of dismissal on the whistle blower claim and pursue the appeal. It was this choice that now precludes new litigation based on the same cause of action. While the doctrine of res judicata deprives the plaintiff of the opportunity to pursue full litigation of the breach of contract and fraud in the inducement claims, the "fault lies not in our justice system but in the failure of the plaintiff to properly use it." Quality Type & Graphics, v. Guetzloe, 513 So.2d 1110, 1111 (Fla. 5th DCA 1987).
The majority's holding rests on the premise that the "facts necessary to prove his three claims were not identical." Op. at 1209. Importantly, the four criteria for the application of res judicata do not include the requirement that the facts necessary to prove a claim be identical. Rather, it is the identity of the cause of action.
With the skill of a surgeon, the majority carves out facts from the single cause of action for each claim for relief, each time redefining the plaintiffs claim. It does so, however, without ever recognizing the cause of action remains the same. This is the identity to which the doctrine of res judicata speaks.
Were it as simple as comparing the factual allegations of separate claims to see if they are identical, as the majority suggests, the doctrine of res judicata would be *1226 eroded to a point of non-existence. Indeed, the plaintiff alleged the same facts in each claim for relief. No one can genuinely dispute that the core of operative facts was the hiring and firing of the plaintiff by the defendant, which all took place within a span of months. In short, the plaintiffs various claims arose out of the same cause of action. See Ragsdale, 193 F.3d at 1235.
"[T]he effect of res judicata `puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue.'" Chandler v. Chandler, 226 So.2d 697, 699 (Fla. 4th DCA 1969) (quoting Gordon v. Gordon, 59 So.2d 40, 43 (Fla.1952)). I would affirm the trial courts final summary judgment because the plaintiffs second complaint violated the doctrine of res judicata and its corollary the rule against splitting a cause of action.[8]
STONE, J., concurring in part and dissenting in part.
I concur in the result only and dissent from that part of the opinion that recedes from our prior decisions.
In my judgment, using any method of defining res judicata or splitting of a cause of action, the result in this appeal should be a reversal. Regardless of whether fraud in the inducement and breach of contract claims may be brought separately with respect to each other, a matter of dicta here, both should be deemed free of the taint of res judicata or splitting a cause of action with respect to the whistleblower claim. Simply stated, the breach of contract and fraud in the inducement claims arise out of the contract, while the whistleblower claim was totally independent of the contract and would be separately maintainable, even if the plaintiff did not have a contract.
I would not recede from Huff, as I do not consider Huff inconsistent with any theory of res judicata. There, in each claim, the plaintiffs were seeking the same damages for the same acts. In both, they sought interest, depreciation, and credits; in one, on a theory that failing to properly credit them was a contract breach, and in the other on a theory that intentionally doing so amounted to a civil theft.
NOTES
[1] The definitional requirements of the statute were not satisfied because Viacom's alleged violation of the injunction did not constitute a "violation of law, rule, or regulation" and the federal district court that issued the injunction did not constitute an "agency" as required to state a claim under the Whistle Blower's Act.
[2] Fla. Patient's Comp. Fund v. Cohen, 488 So.2d 56 (Fla.1986); Fla. Patient's Comp. Fund v. St. Paul Fire & Marine Ins. Co., 535 So.2d 335 (Fla. 4th DCA 1988); Quality Type & Graphics v. Guetzloe, 513 So.2d 1110 (Fla. 5th DCA 1987).
[3] The dissent cites to two of these cases, State v. McBride, 848 So.2d 287, 290 (Fla.2003), and ICC Chemical Corp. v. Freeman, 640 So.2d 92, 93 (Fla. 3d DCA 1994).
[4] The supreme court in Hay indicated that the quoted text was from Jackson v. Bullock, 62 Fla. 507, 57 So. 355 (1912). I have read Jackson in the Southern Reports and in the Florida Reports and do not find the second paragraph of the quoted language.
[5] Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984), is a case where the supreme court, in dicta, quoted the language from Wade, quoted in the body of the opinion.
[6] In discussing the rule against splitting a cause of action, the supreme court has never adopted the broader test from Black's Law Dictionary quoted in the dissent, that defines a cause of action as a "group of operative facts giving rise to one or more bases for suing."
[7] Under Mendez, the plaintiff could not have pursued the appeal of the whistle blower claim while the breach of contract claim was pending. This reinforces that both claims arose out of the same set of operative facts or cause of action.
[8] The majority further holds the four-year statute of limitations does not bar the claim for fraud in the inducement because the last fact necessary to the claim is the termination of the plaintiffs employment. This simply proves that all claims arose out of the same cause of action and the second complaint is now barred by res judicata.