KAHN, J.,
dissenting.
The trial court erred in granting summary judgment to the Department of Transportation (DOT) and denying partial summary judgment to AMEC because the Night Work Lawsuit (NWL) did not bar this suit on the doctrine of res judicata. I, therefore, respectfully dissent.
*244 This case involves separate, unrelated breaches of a contract between AMEC and the DOT for construction of a major highway project over a period of some four- and-a-half years. The first breach occurred one month into the contract when DOT failed to procure mandatory environmental permits for AMEC to work at night. AMEC filed the NWL to recover damages for this breach, after the parties chose not to follow the Disputes Review Board’s (DRB) recommendation for resolution. Over the course of the contract, AMEC submitted subsequent breaches by DOT, including delays due to hurricanes, design errors, material shortages, and insufficient payments, among others, to the DRB. When the DRB process halted before resolution, AMEC filed this suit seeking declaratory judgment to compel completion of the DRB process and seeking damages for the subsequent breaches.
The majority and the DOT rely on the principle of “one contract, one lawsuit” to establish the elements of res judicata. See Albrecht v. State, 444 So.2d 8, 12 (Fla.1984) (stating res judicata as an affirmative defense requires four elements: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the parties; and 4) identity of the quality in the person for or against whom the claim is made). Specifically, the majority relies on Mims v. Reid to find that AMEC had only one cause of action, a single breach of an indivisible contract. 98 So.2d 498, 500-01 (Fla.1957) (holding that the rule of splitting of causes of action, as related to res judicata, does not permit the owner of a single or entire cause of action or an entire indivisible demand to divide or split that cause of action and that all damages from a single wrongful act must be claimed in one action).
Respectfully, the majority’s reliance on Mims is misplaced. Mims did not analyze a contract of any kind, much less an indivisible one. At issue in Mims was a second claim for property damages after the conclusion of a suit for personal injuries; both claims for damages arose contemporaneously from a single collision. Id. at 498. Here, an initial serious breach of a specific provision occurred one month into the contract, resulting in distinct damages; subsequent breaches of different contract provisions occurred, resulting in unrelated damages. See Scovell v. Delco Oil Co., 798 So.2d 844, 846 (Fla. 5th DCA 2001) (stating res judicata or splitting a cause of action did not bar a second lawsuit for breach of a lease when first breach for failure to install new petroleum lines was a separate act resulting in different damages from second breach for failure to remove petroleum equipment following eviction). This is a continuing contract with separate and distinct provisions. Breaches of these provisions resulted in separate causes of action.
DOT does not cite a Florida case upholding the principle of “one contract, one lawsuit” for true serial breaches of a contract. Instead, the cases relied upon by DOT in support of this principle are inap-posite as they concern breaches of contract accrued and available for litigation at the time the first suit was filed. See Dep’t of Agrie, and Consumer Serv. v. Mid-Florida Growers, Inc., 570 So.2d 892, 901 (Fla. 1990) (precluding nursery owners from raising claim for quarantine of their operations that occurred at the same time as the destruction of nursery stock due to infestation of citrus canker, the cause of action of a previous lawsuit); Indianapolis, B. & W. Ry. Co. v. Koons, 105 Ind. 507, 5 N.E. 549, 550-51 (1886) (“Having a right to recover for the failure to construct the crossing, the plaintiff had at the same time the right to recover on the same contract for the failure to build the fences. This being so, it was not competent for him, after recov *245 ering part of the damages accrued in one suit, to maintain another suit on the same contract, to recover other damages which had accrued when the first judgment was rendered.”); Baird v. U.S., 96 U.S. 430, 24 L.Ed. 703 (1877) (barring appellant’s subsequent suit, six years after first delivery of locomotive engines, for cost of the machine, advance cost and labor, and for preference of contracting with government over others, when appellant had been awarded judgment for damages for preference of the contract and other claims were available at the time of the first suit); Gaither Corp. v. Skinner, 241 N.C. 532, 85 S.E.2d 909 (1955) (barring appellant’s subsequent action claiming insufficient roof construction due to consent judgment of appellant’s counterclaim for breach of contract when appellant was aware of the roofing defects prior to entry of the consent judgment). None of DOT’s subsequent breaches took place at the time before the NWL was filed or accrued before entry of the NWL judgment.
Claims for subsequent, unrelated breaches of a contract resulting in new and distinct damages are not barred by res judicata and may be addressed in new lawsuits. See Pipkin v. Wiggins, 526 So.2d 1002 (Fla. 3d DCA 1988) (res judica-ta did not bar current litigation when prior litigation between the parties involved one breach of obligation under a joint venture agreement and instant litigation was based on a different cause of action from a subsequent interference with the same agreement). AMEC correctly relies on U.S. Project Management, Inc. v. Parc Royale East Development, Inc., 861 So.2d 74 (Fla. 4th DCA 2003). Parc Royale involved two separate breaches of the same consulting agreement between a real estate development firm and a condominium developer. See id. at 75. The first lawsuit claimed a breach of a monthly fee provision, the second a breach of an incentive provision. See id. As the Fourth District held:
If a valid contract, which has yet to be fully performed, has been proved, then there must be performance to become due in the future. Following that logic, it is also possible to breach that contract by failing to perform that future bargained-for act. The defense of res judi-cata is inapplicable because the alleged new breach constitutes a new cause of action.
Id. at 77.
Analogous to Parc Royale, DOT breached different contract provisions at different times during the life of the contract. See id. at 76-77. Examining the concept of identity of a cause of action, a court must determine “whether the facts or evidence necessary to maintain the suit are the same in both actions.... ” Identity “is established where the facts required to maintain both suits are identical.” Tyson v. Viacom, Inc., 890 So.2d 1205, 1209 (Fla. 4th DCA 2005) (citations omitted). In Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, the Fourth District stated:
... the rule of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, or more correctly speaking, at the time the issues in the first action were made.... When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.
210 So.2d 750, 753-54 (Fla. 4th DCA 1968), aff'd 245 So.2d 625, 628 (Fla.1971). DOT’S breaches of contract are not “based on a single group of operative facts,” nor does the present matter show any other relationship between the breaches other than *246 occurrence in the context of the construction project. See Tyson, 890 So.2d at 1211 (stating different groups of operative facts gave rise to three different claims as a result of 'wrongful termination; thus the entire employment relationship could not constitute a single transaction).
Additionally, the damages sought for the subsequent breaches are not the “thing sued for” in the NWL suit. Though AMEC is requesting the same type of damages, it seeks money damages resulting from the subsequent breaches, not the first breach of the contract. See Parc Royale, 861 So.2d at 75 (though plaintiff sought money damages for both breaches, the damages resulted from failure to pay under two separate provisions in the agreement); see also, Hillsborough County v. Unterberger, 534 So.2d 838 (Fla. 2d DCA 1988) (finding second lawsuit not barred by res judicata where the attorney’s fees sought were for additional representation, rather than for the attorney’s fees available at the time of the first lawsuit).
I do not see any favorable public policy emanating from the holding in this case. Indeed, no Florida court, in the context of an extended and complex commercial relationship, has ever gone so far in depriving a contracting party of recourse. “It is well-settled the injured party in a breach of contract action is entitled to recover monetary damages that will put it in the same position as it would have been had the party not breached the contract.” Capitol Envtl. Servs., Inc. v. Earth Tech, Inc., 25 So.3d 593 (Fla. 1st DCA 2009). As a basic tenet of contract law, a party who suffers a breach may sue for the resulting damages while validating the contract and continuing to perform. See Harrison v. City of Tampa, 247 F. 569 (S.D.Fla.1918); 14 Williston on Contracts § 43:15 (4th ed. 2009). Applying the bar of res judicata here deprives AMEC of this right. Moreover, the holding forces AMEC to bear the financial burden for DOT’S subsequent breaches without any opportunity for recourse. As Parc Royale held:
The existence of a contractual remedy allowing one to seek all expected benefits from a breached contract should not be determinative of the identity of the cause of action for res judicata purposes. Otherwise, a finding of no breach in a breach of contract action will essentially give the victorious party a ‘get out of jail free’ card, enabling that party to subsequently breach without being subject to legal recourse.
861 So.2d at 77. For these reasons, I would reverse.