DAVIS, Judge.
 

 Mark Ladner and Diane DiGirolamo (the Ladners)
 
 [1]
 
 appeal the final judgment
 
 *101
 
 entered in favor of AmSouth Bank
 
 [2]
 
 on June 16, 2008, following a nonjury trial on their three-count amended counterclaim. We affirm in part, reverse in part, and remand for a new trial on portions of counts one and three of the Ladners’ counterclaim.
 

 On August 14, 2002, the Ladners, residents of Chicago, entered into an agreement with Jerry Hancock, an agent of Water Color Homes, Inc. (Water Color), by which Water Color was to construct a home for the Ladners on North Captiva Island. At Hancock’s suggestion, the Lad-ners contacted AmSouth to obtain financing for the project. AmSouth and the Ladners entered into a loan agreement on October 3, 2002, by which AmSouth agreed to loan the Ladners the funds needed to construct the home and the Ladners agreed to execute a mortgage on the home as collateral for the loan. Once both the construction and loan agreements were signed and after the closing on the loan, the project began.
 

 In August 2003, AmSouth instituted a foreclosure action, alleging that the project had been abandoned and that the loan funds improperly had been diverted from the home construction in violation of the loan agreement. In response to the foreclosure complaint, the Ladners filed a series of counterclaims. Trial proceeded on their fourth amended counterclaim, in which the Ladners raised three distinct counts against AmSouth.
 
 [3]
 
 Count one alleged that AmSouth made fraudulent representations to induce the Ladners to enter into the construction agreement with Water Color and the loan agreement with the bank. Count two alleged that Am-South had breached the loan agreement by making improper disbursements of the loan proceeds. Count three alleged that AmSouth made negligent misrepresentations upon which the Ladners relied in entering the construction agreement and the loan agreement.
 

 After the nonjury trial, the trial court entered a final judgment in favor of Am-South, finding that
 

 there was not a basis for either the fraudulent or negligent misrepresentations and [that] there [was] not a breach of contract in this matter. The contract documents were clear and the plaintiffs did not have a right to rely on the oral allegations when they are specifically contradicted in the written documents which they have [sic] the chance to sign.
 

 It is this judgment that the Ladners now appeal.
 

 This case is complicated by the fact that the issue of the Ladners’ reliance on the misrepresentations by AmSouth relates to two separate and distinct contracts executed by the Ladners — the loan agreement with AmSouth and the construction agreement with Water Color. The essence of the misrepresentations alleged by the Lad-ners involve oral statements made by an employee of AmSouth regarding the fund disbursement procedures that would be followed during the construction and false recommendations that Water Color was a reputable builder.
 

 In the loan agreement signed by the Ladners, AmSouth specifically outlined disbursement procedures contrary to those allegedly represented orally to the Lad-ners.
 
 [4]
 
 The contract further specified as follows:
 

 
 *102
 
 ■ Borrower further agrees that Borrower will not hold Lender responsible or liable in any manner whatsoever for any claims, losses or damages which Borrower may suffer or incur (including without limitation any claim with respect to the amount of funds disbursed in relation to the degree of completion of construction of the Improvements, the quality of the Improvements or materials contained therein, the failure of Contractor to pay materialmen, artisans, suppliers, subcontractor or other lienors ...) as a result of or relating to or arising out of (a) the making of Advances by Lender to Contractor upon the request of Contractor (b) the disbursement of Loan proceeds directly to Contractor or (c) the modification or waiver by Lender, or the failure of Lender to comply with or require compliance with, any or all of the requirements of Section 1.05(b) of the Agreement prior to making any Advance, Borrower expressly acknowledges, understands and agrees that the making of Advances and the payment of drafts directly to Contractor (rather than to Borrower) is for the sole convenience of and benefit to Borrower, and it is Borrower’s intent that Lender shall not suffer, incur or be exposed to any liability by reason of Lender’s compliance or attempted compliance with the terms of this Amendment, whether or not Lender’s actions or inactions in complying or attempting to comply with this Amendment are deemed to be negligent. Accordingly, Borrower further acknowledges, understand^] and agrees that the foregoing release and indemnification provisions operate to release and indemnify Lender with respect to Lender’s own negligence.
 

 Additionally, prior to the execution of the loan agreement, the Ladners acknowledged receiving a document entitled “Important Notice to Construction/Permanent Loan Applicants,” which provided that the choice of a builder for the construction of the home was the responsibility of the borrower and that the bank made “no recommendation of the builder.”
 

 Based on these contractual provisions, the trial court determined that AmSouth was not liable for any damages stemming from the Ladners’ reliance on oral representations made by AmSouth either in regard to the requirements for the disbursement of funds or the choice of a builder. The court also concluded that by the terms of the loan agreement, the Ladners relieved AmSouth of any liability regarding the use of loan funds disbursed during the construction. We agree. Accordingly, we affirm the trial court’s ruling in favor of AmSouth as to all three counts as they relate to the contractual relationship between the Ladners and AmSouth.
 

 However, the Ladners further allege that they detrimentally relied on Am-South’s alleged misrepresentations when entering into the construction agreement with Water Color. We conclude that the trial court did not adequately address this allegation as set out in counts one or three.
 

 In count one, the Ladners allege that AmSouth had negative information regarding the financial integrity of Water Color prior to the Ladners’ signing the construction agreement. Specifically, they allege that Water Color had “bounced” checks at AmSouth, that Water Color had not paid subcontractors on other construction projects financed by AmSouth, that Water
 
 *103
 
 Color had submitted “fraudulent or improperly prepared documents in support of disbursement requests,” and that there was a suspicion that Water Color was “kiting” checks. The Ladners alleged that even though AmSouth was aware of this information, the bank’s representatives spoke highly of the construction company and suggested that the company always submitted proper documents for disbursements and that the bank had never had a problem with the builder. The Ladners specifically allege in count one that they “would not have executed the documents but for the l'epresentations and assurances of AmSouth.” Additionally, in count three, the Ladners allege that “[h]ad [they] known the actual and true facts concerning Water Color Homes they would not have entered into the construction agreement.”
 

 In its final judgment, the trial court determined that count one of the counterclaim did not sufficiently state a claim of reliance “in regard to [the Ladners] entering a construction contract with [Water Color], the builder.” We disagree with this conclusion.
 

 The determination of the sufficiency of a pleading is a matter of law and subject to a de novo review.
 
 See Siegle v. Progressive Consumers Ins. Co.,
 
 819 So.2d 732, 734 (Fla.2002) (“First, [w]hether a complaint is sufficient to state a cause of action is an issue of law. Consequently, the ruling below is subject to de novo review.” (alteration in original) (citation and internal quotation marks omitted)). In reading the pleading at issue here, a question arises as to whether the use of the term “documents” in paragraph 14 of count one of the Ladners’ counterclaim is limited to referring only to the loan agreement and addendum or also refers to the construction agreement with Water Color.
 

 Count one initially recites the representations alleged to have been made by Am-South regarding the builder and the negative information that the bank allegedly had knowledge of when making the representations to the Ladners. The complaint then alleges in relevant part:
 

 10. The Ladners proceeded with the processing of their loan application in reliance upon the representations of AmSouth regarding the contractor and entered into a construction agreement with Water Color Homes.
 

 11.
 
 Loan documents
 
 were forwarded to Illinois and the Ladners were asked to execute and return the
 
 documents
 
 as quickly as possible.... Mark Ladner signed the
 
 loan
 
 documents....
 

 13. The statements of AmSouth ... were made with the intent to induce the Ladners into executing the
 
 loan documents
 
 including the Construction/Permanent Loan Agreement and addendum.
 

 14. The Ladner [sic] reasonably relied on AmSouth’s statements and would not have executed the
 
 documents
 
 but for the representations and assurances of Am-South.
 

 (Emphasis added.)
 

 The trial court read the term “documents” in paragraph 14 to be limited to the loan agreement. This is understandable considering the use of the same term in conjunction with the word “loan” in the paragraphs immediately preceding. However, it is equally possible to read the term to include the earlier reference to the construction agreement in paragraph 10. We find this to be especially true in light of the omission of the word “loan” preceding the word “documents” in paragraph 14. That the latter interpretation was also the understanding of the parties was demonstrated to the trial court by the summary of count one included in AmSouth’s pre
 
 *104
 
 trial brief: “In the first count, titled ‘Fraud in the Inducement,’ Plaintiffs allege that loan officers with AmSouth fraudulently induced them to
 
 enter both a building contract with Water Color Homes, Inc. (‘Water Color’)
 
 and a loan agreement with AmSouth by making various false statements .... ” (Emphasis added.)
 

 Because the complaint does specifically allege that AmSouth made the representations despite having knowledge of the builder’s allegedly questionable financial practices, and because paragraph 10 alleges that “[t]he Ladners proceeded with the processing of their loan application in reliance upon the representations of AmSouth regarding the contractor and entered into a construction agreement with Water Col- or Homes,” the pleading does refer to the construction agreement and sufficiently alleges a cause of action in that regard. Accordingly, the trial court’s conclusion that the pleading in count one of the counterclaim failed to allege that the fraudulent misrepresentations induced the Ladners to enter the construction agreement with Water Color is incorrect as a matter of law and requires reversal.
 

 Furthermore, there is no question that count three of the counterclaim, alleging negligent misrepresentations by Am-South, is related to the construction agreement as it states, “In reliance on these representations the Ladners were induced to enter into a construction agreement with Water Color Homes. Had the Lad-ners known the actual and true facts concerning Water Color Homes they would not have entered into the construction agreement.” In its final judgment, however, the trial court concluded that the Lad-ners’ reliance on the alleged misrepresentations in entering into the construction contract was not reasonable in light of the terms of the notice and the loan agreement executed by the Ladners. While we agree with the trial court’s ruling as it relates to the execution of the loan agreement, at the time they entered the construction agreement with Water Color, the Ladners had no notice warning them not to rely on representations made by AmSouth regarding the builder, nor had they received the loan agreement that put them on notice as to their responsibilities in monitoring the use of the proceeds of the loan as they were dispersed by the bank. Thus the court’s determination that “there was not a basis for either the fraudulent or negligent misrepresentation” with regard to the construction agreement was in error.
 

 On appeal, AmSouth suggests that the factual representations set forth by the Ladners show an ambiguity as to whether the construction agreement was signed before or after the representations concerning the builder were made by AmSouth’s representative. The evidence produced at trial, however, refutes this suggestion. Mark Ladner testified that he spoke with AmSouth’s employee by telephone on August 12, 2002. This was supported by the introduction of a copy of a document that was faxed to AmSouth pursuant to that telephone conversation.
 
 [5]
 
 Mark Ladner further testified that it was during this telephone conversation that the representations at issue were made. The construction agreement was then signed on August 14, 2002. Accordingly, the physical evidence produced at trial supports the testimony of Mark Ladner that he had the telephone conversation prior to executing the construction agreement and well be
 
 *105
 
 fore he received the notice and loan agreement documents on September 30 and October 2, 2002.
 

 Because the trial court did not find that the representations were not made but rather only that the Ladners were not justified in relying upon any representations that had been made, the final judgment must be reversed as to the allegations in count three relating to the construction agreement.
 

 The trial court also relied upon the economic loss rule in determining that the Ladners’ claims were barred. However, we need not address whether the economic loss rule would bar the Ladners’ tort claims against AmSouth that stem from the loan agreement between the Ladners and AmSouth because, as previously stated, the terms of that contract foreclosed those claims.
 

 We do note though that the economic loss rule would not act as a bar to the Ladners’ tort claims against AmSouth that stem from the Ladners’ reliance on AmSouth’s representations when entering into the construction contract with Water Color. “ ‘[W]hen ... fraud occurs in ... connection with misrepresentations, statements, or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort.’”
 
 Output, Inc. v. Danka Bus. Sys., Inc.,
 
 991 So.2d 941, 944 (Fla. 4th DCA 2008) (quoting
 
 D & M Jupiter, Inc. v. Friedopfer,
 
 853 So.2d 485, 487-88 (Fla. 4th DCA 2003)). “ ‘The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach....’”
 
 Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,
 
 891 So.2d 532, 537 (Fla.2004) (quoting
 
 HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,
 
 685 So.2d 1238, 1239 (Fla.1996)). Accordingly, we also reverse the trial court’s finding based on the economic loss rule as it applies to the Water Color contract.
 

 Finally, we conclude without further comment that there is no merit to the Ladners’ argument on appeal that the trial court erred in enforcing the jury trial waiver clause included in their mortgage with AmSouth.
 

 In summary, we affirm the portion of the trial court’s final judgment ruling in AmSouth’s favor on count two and the allegations in counts one and three that relate to the Ladners’ entering into the loan agreement with AmSouth. However, we reverse the trial court’s ruling on the allegations in counts one and three that relate to the contractual relationship between the Ladners and Water Color. We remand for a new trial solely on those issues.
 

 Affirmed in part, reversed in part, and remanded for a new trial.
 

 FULMER and WHATLEY, JJ., Concur.
 

 [1]
 

 . Ladner and DiGirolamo, a married couple, filed a single initial brief in which they refer to themselves collectively as "the Ladners.”
 

 [2]
 

 .Due to a bank merger AmSouth is now known as Regions Bank.
 

 [3]
 

 .The Ladners obtained alternate financing and satisfied the foreclosure suit, leaving only the counterclaim to be decided at trial.
 

 [4]
 

 .The contract signed by the Ladners on
 
 *102
 
 October 3, 2002, consisted of the ''Construction/Permanent Loan Agreement” with exhibits and the "Amendment to Construction/Permanent Loan Agreement.” Since both documents were signed on the same day, for the purposes of this opinion, they are collectively referred to as a single document.