# Third District Court of Appeal

## State of Florida

Opinion filed June 19, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1992
Lower Tribunal No. 17-14568
_____

**951 Harbor Drive, LLC, etc.,**
Appellant,

vs.

**SD Construction, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

Sodhi Spoont PLLC, and Eric M. Sodhi and Nathaniel M. Edenfield, for appellant.

Robert Joseph Alwine, P.A., and Robert J. Alwine, for appellee.

Before LOGUE, C.J., and EMAS and MILLER, JJ.

EMAS, J.

**INTRODUCTION**

951 Harbor Drive, LLC, the plaintiff/homeowner, appeals the trial court's final summary judgment entered in favor of SD Construction, LLC, the defendant/general contractor, based on the rule against claim-splitting.[1]

Upon completion of their new home, 951 Harbor Drive (the homeowner) discovered water damage to the home's interior which it contends was caused by SD Construction's negligent construction of the roof. This discovery led to the filing of two lawsuits. In the first lawsuit (a subrogation action), 951 Harbor Drive's insurance company (Privilege Underwriters Reciprocal Exchange or PURE) sued SD Construction to recover monies it paid to 951 Harbor Drive, under the insurance policy, for damages caused to the home's interior. In the second lawsuit—which was filed while the first lawsuit was still pending—951 Harbor Drive sued SD Construction for damages "to repair and/or replace" the negligently constructed roof system, for which damages were not covered by the PURE insurance policy.

---

[1] "The rule against splitting causes of action requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all." Dade Cnty. v. Matheson, 605 So. 2d 469, 472 (Fla. 3d DCA 1992) (citations omitted).

The first lawsuit was settled, and a release executed by PURE and SD Construction. The settlement expressly excluded the still-pending second lawsuit from the scope of the release.

Over three years after settling the first lawsuit, SD Construction moved for summary judgment in the second case, contending for the first time that 951 Harbor Drive violated the rule against claim-splitting, and that 951 Harbor Drive should have brought its cause of action against SD Construction in a single lawsuit (i.e., it should have intervened in PURE's subrogation action against SD Construction).

In response, 951 Harbor Drive argued that SD Construction waived its right to invoke the rule against claim-splitting, having failed to plead it as an affirmative defense. The trial court granted summary judgment in favor of SD Construction, finding that 951 Harbor Drive violated the rule against claim-splitting, and that SD Construction's affirmative defense—entitled "Settlement and Release"—adequately placed 951 Harbor Drive on notice that the cause of action asserted in its lawsuit against SD Construction was barred by the rule prohibiting the splitting of claims.

We agree with 951 Harbor Drive and hold that SD Construction waived its right to invoke the rule against claim-splitting by failing to plead it as an

3

affirmative defense. We therefore reverse and remand for further proceedings consistent with this opinion.[2]

**FACTS AND PROCEDURAL HISTORY**

951 Harbor Drive is the owner of the home located at 951 Harbor Drive in Key Biscayne. In 2010, it retained SD Construction as a general contractor to construct a new home on the property.

Once construction was completed and the home occupied, the homeowners observed water intrusion causing damage to the home's interior. 951 Harbor Drive filed a claim with its insurance company, PURE, and PURE, in turn, commissioned an engineering company to inspect the home and determine the cause of the water damage. Its report documented water intrusion in various areas of the home, and indicated the cause was a faulty roof waterproofing system. PURE ultimately paid the claim in the amount of $226,789.12, however the payment only covered the interior damage to the home, not repair or replacement of the faulty roof system. This is so because the repair or replacement of the roof system was not covered by the PURE insurance policy.

---

[2] Because this issue is dispositive, we do not reach the remaining claims raised by 951 Harbor Drive on appeal, including whether SD Construction consented to both claims being brought when it executed its settlement with PURE; and whether the trial court erred in refusing to apply the Rosenthal exception in this case. Rosenthal v. Scott, 150 So. 2d 433 (Fla. 1961).

4

As part of the settlement of this insurance claim, PURE and its insured, 951 Harbor Drive, entered into a subrogation agreement and policyholder's release clarifying, in pertinent part, that the agreement did not relate to any purported construction defects which caused the water intrusion, nor did it waive any potential claims 951 Harbor Drive may have against third parties for such defects.[3]

### The First Lawsuit: *PURE v. SD Construction*

In March of 2017, PURE sued SD Construction, pursuant to its subrogation rights, to recoup its insurance payout of $226,789.12 to its

---

[3] The subrogation agreement between PURE and 951 Harbor Drive provided:

> **Neither the Claim, the Settlement Sum or the Release are related to the construction defects which caused the water intrusion; but rather, only the damage to the Residence** resulting from the water intrusion caused by the Loss and paid by Insurer in the Settlement Sum.
>
> [T]his Assignment and Subrogation Receipt does not waive, cover, address, affect or alter any claims that Owners may have against any third parties for any loss or damages that were not covered by the Claim and Settlement Sum, including, but not limited to, negligence, breach of contract, breach of warranty, and construction defect claims against contractors, design professionals, materialmen or other persons, to recover costs associated with repairing and replacing the faulty design, construction, and materials that caused the water intrusion.

(Emphasis added).

insured (951 Harbor Drive). Two years later (February 12, 2019), PURE and SD Construction entered into a settlement agreement (the Subrogation Settlement) and, pursuant to that Subrogation Settlement, PURE voluntarily dismissed with prejudice its lawsuit against SD Construction. At the time of the Subrogation Settlement, the instant lawsuit (951 Harbor Drive v. SD Construction, Case No.: 2017-014568-CA-01) was already filed and pending.

The Subrogation Settlement between PURE and SD Construction provided in pertinent part that it "**does not cover, release, discharge, waive, settle or in any way affect** and/or alter any of the pending and/or future causes of action, . . . **including but not limited to the lawsuit currently pending by [951 Harbor Drive] against [SD Construction] and others in Miami-Dade County Circuit Court (Case No.: 2017-014568-CA-01).**" (emphasis added). The Subrogation Settlement similarly preserved SD Construction's defenses "in any pending and/or future causes of action . . . including but not limited to the lawsuit currently pending by [951 Harbor Drive] and others in Miami-Dade County Circuit Court (Case No.: 2017-014568-CA-01)."

**The Second Lawsuit: *951 Harbor Drive v. SD Construction***

6

In June 2017, three months after PURE filed its subrogation lawsuit, 951 Harbor Drive filed its own lawsuit against SD Construction, not for the resulting property damage caused by the water intrusion, but instead for damages to cover the cost "to repair and/or replace" the allegedly "deficient roof system, post and cable rail system, and to restore the integrity of the waterproofing system of the roof." 951 Harbor Drive asserts it filed this suit and sought these damages because they were not covered by the PURE homeowner's policy, under which 951 Harbor Drive was paid for the damage caused by water intrusion to the interior of the home and furnishings.

In April 2019, SD Construction filed its operative Answer and Affirmative Defenses, which included its twenty-sixth affirmative Defense, entitled "Settlement and Release." It stated, in essence, that because 951 Harbor Drive's claims were assigned, settled and released, they were barred; the defense further noted the case number in that first lawsuit.

In March of 2022—three years after filing its answer and affirmative defenses, and approximately seven months before the scheduled October trial date—SD Construction moved for summary judgment, contending 951 Harbor Drive's lawsuit was barred by the rule against splitting claims. 951 Harbor Drive responded in opposition, arguing inter alia that the rule against claim-splitting was not raised as an affirmative defense.

7

Following a hearing, the trial court granted SD Construction's motion for summary judgment. It found, based on the undisputed facts, that 951 Harbor Drive's lawsuit was barred by the rule against claim-splitting, and that SD Construction sufficiently pled this affirmative defense.

The trial court denied 951 Harbor Drive's motion for rehearing, and this appeal followed.

## STANDARD OF REVIEW

This Court reviews de novo a trial court's granting of summary judgment. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). The determination of the sufficiency of a pleading is also a matter of law, which we review de novo. See D'Agostino v. CCP Ponce, LLC, 274 So. 3d 1141, 1147 n.9 (Fla. 3d DCA 2019); Ladner v. AmSouth Bank, 32 So. 3d 99, 103 (Fla. 2d DCA 2009) ("The determination of the sufficiency of a pleading is a matter of law and subject to a de novo review.").

## ANALYSIS AND DISCUSSION

The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" Vanover v. NCO Fin. Servs., Inc., 857 F.3d 833,

8

841 (11th Cir. 2017) (citation omitted). Courts characterize claim-splitting as an "aspect" of res judicata and claim preclusion, protecting parties from duplicative litigation and promoting judicial economy. Id. Despite these similarities, claim-splitting is "more concerned" with a trial court's "comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." Id. (citation omitted). However, we need not reach the merits of whether 951 Harbor Drive violated the rule against claim-splitting, because we conclude that SD Construction failed to raise this affirmative defense in its answer to the complaint.

We begin with the rather unremarkable proposition that "a summary final judgment cannot be based upon a defense raised in the summary judgment motion that had not been previously asserted in the answer." LaBella v. LaBella, 324 So. 3d 37, 39 (Fla. 5th DCA 2021) (citing Danford v. City of Rockledge, 387 So. 2d 968, 969-70 (Fla. 5th DCA 1980) ("Procedurally, we agree with the appellant that an affirmative defense of res judicata or release should not be raised by a motion for summary judgment prior to raising such defense in an answer.")); see also Lobrillo v. Brokken, 837 So. 2d 1059, 1061 (Fla. 3d DCA 2002) ("Because [defendants] did not plead the affirmative defense on their behalf, the trial court erred by considering the defense and by granting final summary judgment on that

ground."). On motion for summary judgment, the trial court may consider only matters raised in the pleadings. <u>Wilson v. Stone</u>, 172 So. 3d 559, 560 (Fla. 3d DCA 2015). In determining whether a party sufficiently raised a defense to a complaint, courts look to the pleading's substance, regardless of whether it is mislabeled. <u>See</u> <u>Est. of Willis v. Gaffney</u>, 677 So. 2d 949, 951 (Fla. 2d DCA 1996) ("[A] pleading will be considered what it is in substance, even though mislabeled." (quoting <u>Sodikoff v. Allen Parker Co.</u>, 202 So. 2d 4, 6 (Fla. 3d DCA 1967))).

Florida Rule of Civil Procedure 1.140(b) provides the requirements for a party to plead an affirmative defense to the complaint, and provides in pertinent part:

> **Every defense in law or fact to a claim for relief in a pleading must be asserted in the responsive pleading, if one is required**, but the following defenses may be made by motion at the option of the pleader: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a cause of action, and (7) failure to join indispensable parties. **The grounds on which any of the enumerated defenses are based and the substantial matters of law intended to be argued must be stated specifically and with particularity in the responsive pleading or motion. Any ground not stated must be deemed to be waived** except any ground showing that the court lacks jurisdiction of the subject matter may be made at any time. No defense or objection is waived by being joined with other defenses or objections in a responsive pleading or motion.

(Emphasis added).

10

A core purpose for the rule requiring a party to plead an affirmative defense "is to place the opposing parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice." Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (addressing parallel Federal Rule of Civil Procedure 8(c)). As this court has observed: "A properly pled affirmative defense includes ultimate facts sufficient to provide notice of the proof the defendant intends to rely upon to defeat the plaintiff's claim." S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n, 89 So. 3d 264, 267 (Fla. 3d DCA 2012) (citing Zito v. Wash. Fed. Savs. and Loan Ass'n, 318 So. 2d 175, 176 (Fla. 3d DCA 1975)); see also Stone v. Stone, 97 So. 2d 352, 354 (Fla. 3d DCA 1957) (reversing dismissal on grounds of res judicata/estoppel by judgment, where such was not pled as an affirmative defense, but instead raised in a motion to dismiss; noting that permitting such a procedure would deny the opposing party the benefit of notice and opportunity to reply, "if not in effect denying him due process").

Rule 1.140(h) provides that a party waives all defenses and objections that the party fails to present in a responsive pleading (or, though inapplicable here, by motion filed prior to a responsive pleading). See also Scott v. Rosenthal, 118 So. 2d 555, 558 (Fla. 3d DCA 1960) ("The rule that a cause of action may not be split into two or more causes of action is for the

11

benefit of the party defendant and he may waive his right to insist on the rule forbidding splitting of a single cause of action."). In the instant case, it is to the answer and affirmative defenses we look in determining whether the affirmative defense of claim-splitting was adequately pled by SD Construction.

In its twenty-sixth affirmative defense, entitled "Settlement and Release," SD Construction pled the following:

> SD affirmatively states that **Plaintiff's claims,** in whole or in part**, were assigned, and subsequently settled and released**, **and therefore barred.** This includes, but is not limited to, **any releases entered into between SD and PURE . . . and more specifically those claims that were subject of a lawsuit** in the 11th Judicial Circuit of Florida, in and for Miami-Dade County, Case No. 2017-6935-CA-01 [the first lawsuit].

(Emphasis added).

As can readily be seen, nowhere does SD Construction use the term claim-splitting, nor allege that 951 Harbor Drive is prohibited from pursuing this lawsuit because it failed to join it with the subrogation lawsuit previously filed by PURE. Instead, SD Construction's affirmative defense alleges that the claim raised in the present lawsuit was already "assigned, and subsequently settled and released" in the subrogation lawsuit filed by PURE

12

against SD Construction, and the action in the second lawsuit is "therefore barred."[4]

It's true of course that in our analysis we look not to the label or title of an affirmative defense ("Settlement and Release") but to the substance of the affirmative defense, to avoid elevating form over substance. Patterson v. Weathers, 476 So. 2d 1294, 1296 (Fla. 5th DCA 1985). This principle does not alter the result, however, because the title of the affirmative defense and its substance are entirely consistent. SD Construction has pled a prototypical affirmative defense of settlement and release, and no opposing party could reasonably have construed this defense as placing it on notice that SD Construction was raising the rule against claim-splitting. Indeed, the manner in which SD Construction chose to plead this affirmative defense—contending that the language of the settlement and release somehow barred 951 Harbor Drive's lawsuit (Circuit Case No. 2017-6935-CA-01)—would necessarily cause 951 Harbor Drive to review the referenced release document which expressly excludes 951 Harbor Drive's lawsuit from the

---

[4] While SD Construction correctly notes that "[t]he rule against splitting causes of action is 'an aspect of the doctrine of res judicata,'" see Tyson v. Viacom, Inc., 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005) (citation omitted), but it is nevertheless unavailing in the instant case, given that SD Construction did not include res judicata, collateral estoppel, or claim-splitting among its twenty-six asserted affirmative defenses.

scope of the settlement and release entered into by PURE and SD Construction. As noted above, the settlement and release executed by PURE and SD Construction provided in relevant part that it did not cover or affect any pending causes of action, including 951 Harbor Drive's lawsuit against SD Construction:

> [T]his Release and Settlement Agreement **does not cover, release, discharge, waive, settle or in any way** **affect and/or alter any of the pending and/or future causes of action**, legal actions, claims, interests, rights, uninsured claims, and/or any other claims that [PURE's] Insured ever had, now has, may have, or hereafter can, shall or may have against any parties, **including but not limited to the lawsuit currently pending by [951 Harbor Drive] against [SD Construction] and others in Miami-Dade County Circuit Court (Case No.: 2017-014568-CA-01).**

(Emphasis added).

In other words, after reviewing SD Construction's twenty-sixth affirmative defense in tandem with the above release and settlement agreement, 951 Harbor Drive would have had no reason to reply to the affirmative defense, take any further action in contemplation of that affirmative defense, or believe that SD Construction had invoked the rule against claim-splitting.

Throughout the litigation, SD Construction acted inconsistently with any purported pursuit of a claim-splitting defense. For example, SD Construction did not raise the claim-splitting rule until its motion for summary

14

judgment filed in March 2022, three years after filing its affirmative defenses, and only two months before the trial court issued its order setting the matter for trial.[5]  During those three years, the parties were referred to mediation from which no agreement was reached, SD's counsel withdrew and a new attorney was hired,  and the parties continued preparing for trial, e.g., filing proposed jury instructions and exhibit lists.  Indeed, the motion for summary judgment was filed outside the deadlines imposed by the trial court's February 2022, Case Management Order.[6]

---

[5] 951 Harbor Drive rightly contends it was prejudiced by the fact SD Construction failed to adequately plead this affirmative defense, raising it for the first time three years later in its motion for summary judgment.  Had SD Construction timely and adequately placed 951 Harbor Drive on notice that it intended to take the position that 951 Harbor Drive's lawsuit would be barred by PURE's earlier lawsuit by operation of the rule prohibiting splitting causes of action, 951 Harbor Drive could have addressed the issue promptly by, e.g., attempting to intervene into the PURE matter, moving to transfer and consolidate the PURE case with the instant lawsuit, or requesting that PURE participate in the instant lawsuit against SD Construction to preserve its subrogation rights. But the manner in which SD Construction pled the affirmative defense reasonably caused 951 Harbor Drive to take no action, which ultimately proved prejudicial when SD Construction moved three years later for summary judgment based upon an unpled affirmative defense.

And of course, given our decision, SD Construction may not, on remand, seek to amend its affirmative defenses to assert the rule against claim-splitting.  See Don Suntan Corp. v. Tanning Rsch. Labs, 505 So. 2d 35, 36 (Fla. 5th DCA 1987).

[6] Again, by the time SD Construction moved for summary judgment and, certainly by the time the trial court entered its order, the parties were prepared to proceed to trial: On March 23, SD Construction moved for summary judgment based on the rule against claim-splitting; on September

15

To further illustrate the lack of notice provided by the twenty-sixth affirmative defense, we need only compare the language in the defense to the language in the summary judgment motion. The opening paragraph of SD Construction's motion for summary judgment asserts:

> Plaintiff's lawsuit is barred by Florida law prohibiting claims-splitting. A plaintiff may not file multiple complaints or split its damages from a single event in multiple lawsuits. Here, Plaintiff's insurer previously filed a subrogation action on behalf of Plaintiff against SD Construction for property damages to the same home caused by the same alleged water intrusion as Plaintiff seeks in this action.

Unlike its twenty-sixth affirmative defense, SD Construction's motion for summary judgment clearly and unequivocally invoked the rule against claim-splitting.  Yet SD Construction provides no explanation for its failure to do the same in its affirmative defense, nor offers any reasonable basis to conclude that the affirmative defense, as pled, was "sufficient to provide notice of the proof the defendant intends to rely upon to defeat the plaintiff's claim." S. Florida Coastal Elec., 89 So. 3d at 267.

The argument advanced in SD Construction's own motion for summary judgment underscores the discrete and very different nature between a

22, the trial court held a hearing on the motion; on October 13, the trial court entered an order on the pretrial conference; on October 20, the parties submitted their joint pre-trial statement (pursuant to the October 13 order); and on October 22—two days before the scheduled trial date—the trial court entered its order granting summary judgment for SD Construction.

16

defense of settlement and release and a defense of claim-splitting. While SD Construction adequately pled the former, it failed to plead the latter, and thereby waived the affirmative defense, which could not be raised for the first time in its subsequent motion for summary judgment.

## CONCLUSION

We hold that the trial court erred in entering summary judgment in favor of SD Construction based upon the rule against claim-splitting. SD Construction waived the rule against claim-splitting by failing to plead it as an affirmative defense. We therefore reverse the final summary judgment and remand for further proceedings consistent with this opinion.